(No. 5358.   May 25, 1929.)

In the Matter of the Estate of ALBERT W. FISHER, Deceased. LEONARD M. FISHER, Contestant and Appellant, v. MARY H. THOMPSON, Executrix and Respondent.

[279 Pac. 291.]

Peterson, Baum & Clark, for Appellant.

Adelyne Burrus and D. W. Standrod, for Respondent.

T. BAILEY LEE, J.—Albert W. Fisher died in Pocatello, September 11, 1927. Shortly thereafter, his daughter, the respondent, appeared in the probate court of Bannock county with an alleged holographic will of the deceased. Certain cancelations appeared on the face of said instrument, as well as two additions on the reverse side, the former of which bore cancelation in part. Along the left margin of the instrument's face, appeared the legend: "I declare this will is entirely written dated and signed by my hand." At the bottom of the first page, was the word: "Over." Aside from these two notations, the body of the alleged will was as follows:

"Pocatello, May 23, ~~1921~~ 1923.

"I Albert W. Fisher, ~~herby~~ hereby make my last will.

"I give and bequeth to my daughter, Mary H. Thompson, the old home, situated on Lots number, 5–6–7–8–9–10–11–12 & 13, in Block number 47, in the City of Pocatello, Idaho, together with all the hereditmance and appurtenances thereunto belonging.

"I give and bequeth to my Grand Daughter Beverly Jean Marshall, One Thousand Dollars ($1000/00), to be invested in some good security, and she is to receive the same when she becomes of age.

~~"I give and bequeth to my Son Albert S. Fisher One thousand Dollars ($1000/00)~~

"I give and bequeth all the rest of wathsoever ~~I am~~ property I have, to my daughters Mary H. Thompson and Elsie M. Marshall and my ~~two my~~ Sons Julian F. Fisher ~~and Leonard M. Fisher~~, to be dividet amongst them share and Share alike.

"I hereby nominate Mary H. Thompson as executor of this my last will without bond.

"ALBERT W. FISHER

"Witness

"CORNELIA DAMEWOOD

"(Reverse side)

"I give and bequeth to my son Leonard M. Fisher, ~~Five Hundred ($500/00) dollars~~ One Thousand ($1000) dollars.

"ALBERT W. FISHER

"Pocatello October 9th 1923.

"I give and bequeth to my son Albert S. Fisher, Five Hundred (500/00) Dollars

"ALBERT W. FISHER

"Pocatello May 31st 1924."

Appellant filed a contest against said instrument upon the grounds that the decedent, at the time of its execution, was not of sound and disposing mind; that his action had been unduly influenced by respondent; that the document was ambiguous, unintelligible and uncertain, not clearly disclosing the testator's intention, and that, inasmuch as the cancelations had not rendered the affected matter illegible, full faith and credit should be given the original verbiage.

From a judgment of the initial court, dismissing the contest and admitting the will to probate, appeal was taken to the district court, where the cause was tried *de novo*

by the court without a jury, and judgment affirming the lower court duly entered. The contestant has appealed.

Inasmuch as appellant evidently has abandoned the charges of undue influence and unsoundness of mind, this discussion narrows down to the validity of the will as we find it. Taken as a whole, giving due effect to all cancelations and additions, the testator's intention cannot be doubted. But, as appellant very aptly contends, it is not enough that the intention be clear, if the document in its execution shall have fallen short of the statutory requirements. C. S., sec. 7811, defining a holographic will, declares:

"An holographic will is one that is entirely written, dated and signed by the hand of the testator or testatrix (who may be either married or unmarried). It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

The court found that the said will was discovered, shortly after the testator's death, in a sealed envelope among the decedent's effects, and delivered, so sealed, to the probate judge by respondent's attorney; that the said will and codicils, together with the changes and erasures therein, were made, written, dated and signed by the hand of the testator at the place and times indicated, and that said will and codicils were by the testator then intended to be his last will and testament.

It but remains, therefore, to determine whether or not the findings are supported by substantial evidence, and the conclusion of validity drawn therefrom is correct. The cancelations being apparent, the duty devolved upon the proponent to explain them (C. S., sec. 7980), or at least to show that the original instrument had not been altered since coming into her hands. (*Mulkey v. Long,* 5 Ida. 213, 47 Pac. 949.)

Respondent testified without contradiction that, although she had, prior to her father's death, seen in his safe a sealed envelope marked "Will," she had never seen the instrument, itself, until, shortly after his decease, she had delivered the envelope still sealed to her attorney, with

instructions to deliver it to the probate judge, and the same had been duly opened by said officer. As to the fact and manner of such delivery, she was corroborated by both that officer and her attorney; the court evidently believed her.

That the entire body of the instrument, together with the signatures, aside from that of the attesting witness, was in the handwriting of the testator was abundantly proven to the court's satisfaction. Who made the cancelations? While respondent did not in terms say she did not, her testimony is that she never saw the instrument itself until the probate judge showed it to her. And having shown that she took it from the deceased's private safe, sealed when she first saw it, she may successfully invoke the well-recognized presumption that the testator and none other was responsible for such cancelations. ''Where a will is found among testator's effects, and it is cancelled or obliterated, the *prima facie* presumption is that the testator made the cancellation or obliteration and that it was done *animo revocandi*.'' (40 Cyc. 1280.) Such cancelations or erasures are permissible. (28 R. C. L., p. 184, par. 142; *Cook v. Jeffett*, 169 Ark. 62, 272 S. W. 873; *Stephens v. Leatherwood* (Tex. Civ. App.), 295 S. W. 236.) ''If only a single clause is so cancelled or obliterated, then that clause only is revoked.'' (40 Cyc. 1194.)

Appellant's numerous specifications affecting the introduction of evidence have not been discussed in the brief, hence require no comment here.

Judgment affirmed. Costs to respondent.

Budge, C. J., and Givens, Wm. E. Lee and Varian, JJ., concur.

(July 17, 1929.)

ON PETITION FOR REHEARING.

T. BAILEY LEE, J.—In view of the serious earnestness with which appellant in his petition declares that there is no evidence in the record that the will is in the handwriting

of the testator, it is incumbent upon us to call his attention to the evidence referred to.

■ At the outset we will not only admit, but emphatically confirm, appellant's categorical assertion that: "There is not a shadow of testimony to substantiate that statement in the supreme court's decision." However, testimony is not synonymous with evidence. If competent, anything whatsoever, perceptible to the five senses, when submitted to court or jury constitutes evidence.

■ Here, in the record, appears a sheaf of exemplars, consisting of over twenty letters, checks, affidavits, notebooks and other writings, each of which was positively. sworn to be in the handwriting of the testator. These exhibits were duly admitted and by the court considered. Were they evidence? Witness the declaration of C. S., sec. 7971:

"Whenever the genuineness of a writing is at issue, any writing admitted or proved to be genuine is competent evidence as an exemplar for the purpose of comparison with the disputed writing: . . . . "

What is an exemplar? A specimen. (New Standard.Dictionary.) And a specimen is capable of supporting both deduction and inference. Not this court alone, but scores of others, have recognized the competency of such exemplars as ultimate evidence. The practice and its desirability are illuminatingly set forth in 10 R. C. L. 994, par. 180:

"The old rule has been repudiated, however, in most if not all jurisdictions, and it is now generally recognized that a comparison of writings is a rational method of investigation, and that similarities and dissimilarities thus disclosed are *probative, and as satisfactory* in the instinctive search for truth as opinion formed by the unquestioned method of comparing the signature in issue with an exemplar of the person's handwriting *existing in the mind* and derived from direct acquaintance, however little, with that handwriting. . . . . " (Italics ours.)

By act of Congress, March 3, 1913, comparison of handwritings is now permitted in the federal courts. To the

same effect is 22 C. J., pp. 772 and 778, pars. 876 and 879, citing a host of decisions.

■ As to the cancelations in the will, appellant finds fault with the presumption that they were made by the dead man, since the proponent for some considerable time had access to the repository in which the will was found. And appellant urges that no such presumption obtains in the face of such admitted fact. Appellant is mistaken. The presumption is there all the time, but may be overcome when nothing more is shown than that someone had opportunity to tamper with the instrument. In the instant case, the proponent swore that, while she had seen in the safe the envelope containing the will, she had never seen the will itself until opened by the probate judge. In the presence of her oath, evidently believed by the trial judge, the presumption of tampering based upon her opportunity to tamper fell flat.

Rehearing denied.

Budge, C. J., and Givens, Wm. E. Lee and Varian, JJ., concur.