[No. 14944.   Department Two.   November 22, 1918.]

W. E. HANSON, *as State Bank Examiner, etc.,*
*Respondent,* v. LOUIS ROESCH *et al.,*
*Appellants,* CHARLES DRAKE
*et al., Defendants.*[1]

BILLS AND NOTES (65, 73-6)—NEGOTIATION—HOLDER IN DUE COURSE —AFTER DUE—SET-OFF—STATUTES.   Where a note is not indorsed by the payee until it is overdue, the holder is not a holder in due course and the note is subject to offsets against the payee, under Rem. Code, § 3440, providing that, for the purpose of determining whether a transferee is a holder in due course, the negotiation takes effect as of the time the indorsement is actually made, and Id., § 3443, requiring that the transferee became holder before the note was overdue.

TRIAL (150)—JUDGMENT NON OBSTANTE—AFFIRMATIVE RELIEF— FINDINGS.   Where the court takes a case from the jury and grants affirmative relief, it becomes a trial by the court, requiring findings under Rem. Code, § 367.

[1]Reported in 176 Pac. 349.

9—104 WASH.

EVIDENCE (153)—PAROL EVIDENCE TO VARY WRITING—RECEIPTS— AMBIGUITY.  Unilateral letters or receipts are not conclusively binding and admit of parol evidence to explain the meaning of the words, "$775 to be credited on account."

SAME (157)—NATURE OF CONSIDERATION.  Parol evidence is admissible to show that the consideration for deeds and written instruments was to be held in trust for the holder of, and credited upon, the notes of the grantors.

PARTNERSHIP (8, 41)—LIABILITIES OF DORMANT PARTNERS—ESTOPPEL.  Where articles of limited partnership were not drawn under Rem. Code, §§ 8359-8368, nor a certificate of an assumed business name filed for the protection of the public, as required by Id., § 8369, a dormant or silent partner constitutes the visible partners agents of the partnership, and a creditor may offset his debt against the partnership.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 28, 1918, in favor of the plaintiff, notwithstanding the verdict of a jury rendered in favor of the defendants, in an action on promissory notes.  Reversed.

*Edwin H. Flick,* for appellants.

*C. H. Winders, M. M. Richardson,* and *Hugh C. Todd,* for respondent.

HOLCOMB, J.—The state bank examiner, successor in interest of the German-American Mercantile Bank (defunct), in liquidating its affairs as required by law, prosecutes this action on three promissory notes aggregating $4,500 principal, with interest at eight per cent per annum, payable to the order of Mercantile Funding Company, a partnership.  One note for $2,000, dated October 19, 1914, and payable on or before April 19, 1915, was signed, "Louis Roesch" and "Edward Roesch."  It was indorsed, "Interest paid to April 19, 1916, Mercantile Funding Co., by W. J. Bruggemann."  The second note, for $1,000, dated November 9, 1914, and payable on or before May 9,

1915, was signed, "Edward Roesch, Roesch Motor Car
Co., and Louis Roesch." It was indorsed, "Interest
paid to May 9, 1916. Mercantile Funding Co., by
W. J. Bruggemann." The third note, for $1,500,
dated November 28, 1914, and payable on or before
April 19, 1915, was signed, "Roesch Motor Car Co.,
Edward Roesch." It was indorsed, "Interest paid to
May 19, 1916. Mercantile Funding Co., by W. J.
Bruggemann."

The defendants Roesch admit the execution of the
notes and claim an offset, if valid, together with
usury, would satisfy the obligation of these notes.
They allege, in substance, that, on November 9, 1914,
they agreed to, and did, turn in to Charles Drake and
W. J. Bruggemann, who they allege were sole part-
ners, so stated by them, comprising Mercantile Fund-
ing Company, a certain lot at a fixed price of $800,
plus one-half of the profits to be derived by the
erection and sale of a bungalow on the lot, which
netted the Mercantile Funding Company $1,400; that,
on March 27, 1915, defendants Roesch turned in an au-
tomobile at an agreed price of $1,150, which amount
defendant Roesch paid in behalf of Drake and Brug-
gemann as the Mercantile Funding Company to the
Velie Motor Car Company, and that both Drake and
Bruggemann stated that they needed this car in the
business and would use it in the business of the
Mercantile Funding Company, that of building
houses and loaning money; that, about September 4,
1915, defendants Roesch exchanged this car for a new
one, charging $775 additional; that both the automo-
bile charges were agreed to be credited upon the Mer-
cantile Funding Company notes, and that it was again
stated that these parties mentioned would use and
needed the use of the car in the business of the Mer-

cantile Funding Company; that, on January 26, 1916, Drake and Bruggemann agreed to, and did, take over certain notes from one Anderson in the amount of $526, rightfully belonging to Roesch Motor Car Company as a balance due on the Anderson car, and agreed to credit same on the Mercantile Funding Company's notes herein referred to; that the foregoing credits were agreed upon immediately at the closing of the above transactions, and were, at various times thereafter, referred to by Drake and Bruggemann as having been given upon the notes; that defendants Roesch had no knowledge that defendant Guidicelli was a partner in the Mercantile Funding Company, and were led to believe, and did believe, that Bruggemann and Drake were the sole partners therein, until after September 1, 1916, when for the first time defendants Roesch knew that the notes had been pledged by the Mercantile Funding Company to the German-American Mercantile Bank, and that at that time the notes were unindorsed, overdue a year and a half, and showed no credits in favor of defendants Roesch; that defendants Roesch, under protest and without waiver of any and all their rights existent therein, as appears more fully in a certain contract, paid on the notes the sum of $500, on or about December 12, 1916, to the German-American Mercantile Bank; that, at all times herein mentioned and up to approximately October 1, 1916, W. J. Bruggemann was, and continued to act as, a director or trustee of the German-American Mercantile Bank, and was during all of the times manager of the Mercantile Funding Company, actively engaged in all of its operations and fully conversant with all of the matters herein recited, and the German-American Mercantile Bank had full knowledge of all of the transactions at the time of taking over the notes;

that the defendants Roesch paid as bonus one per cent per month for six months on the loan made represented by each of the notes, which interest or bonus is usurious, and they claim a credit for such usury. The defendants Roesch pray for a dismissal against plaintiff and the other defendants, and for a judgment against the German-American Mercantile Company for the return of $500 under that agreement made December 12, 1916. T. O. Paxton was dismissed from the action early in the trial.

The cause was tried by the court sitting with a jury, which returned a verdict for the defendants. The court granted a motion notwithstanding the verdict, and entered a judgment against defendants, and each of them, for the sum of $3,099.43, and against defendants Guidicelli and Drake, and each of them, for $2,428.92 additional. The defendants Roesch presented findings of fact to the court, but the court refused to make any findings. The defendants Roesch excepted to the court's refusal to make findings, and excepted to the judgment entered against them. The defendants Roesch appeal.

Appellants assign as errors: (1) Granting motion *non obstante veredicto*; (2) refusal to make findings after granting motion *non obstante*; (3) refusing testimony to explain receipts or letters (Roesch exhibits 2, 3, and 4), both as to undisclosed principal and as to consideration, and as affecting the interest of any parties not signatory thereto; (4) refusing testimony explaining inducement and consideration for the transfer of property, which consideration is to be paid by another; (5) that a dormant partner has no rights that he or she can assert where other parties have been led by the known parties to contract along certain lines, if the assertion of those rights would mili-

tate against the parties so contracting with the active partners; and (6) that the law provided ample protection to Guidicelli if she had insisted on filing the required form of firm name and style. We will digress somewhat before examining directly the errors assigned.

It is evident that the maker of a negotiable instrument may plead a set-off against the payee, provided the instrument has not been negotiated to a holder in due course for value. Under our statute of negotiable instruments, Rem. Code, § 3421, it is plain that instruments payable to order must be indorsed and completed by delivery. Rem. Code, § 3440, relating to transfer of negotiable instruments payable to order, is as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer. *But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made.*" [Italics ours.]

As to who is a holder in due course, Rem. Code, § 3443, is as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) *That he became the holder of it before it was overdue,* and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." [Italics ours.]

The notes in question had not been indorsed by the payee until more than one year after due; therefore the holder of the notes cannot be considered as a holder in due course, and the maker of the notes may prove such offsets as would have been available to him against the payee of the notes prior to indorsement. The instructions given by the court to the jury relating to the offsets were proper had such testimony been allowed or not stricken, but with such testimony disallowed and stricken, there was nothing for the jury to pass upon, excepting the testimony of the purchase of the first automobile, usurious interest, $500 payment, and some letters or receipts relating to the offsets but referring to other parties than the Mercantile Funding Company; and the court should have either granted a new trial or instructed the jury within the scope of proof received.

The judgment *non obstante* granting affirmative relief is without findings. When the court takes the case from a jury and grants affirmative relief it, in effect, becomes a trial by the court, which in law actions requires findings, under Rem. Code, § 367. *Boe v. Hodgson Graham Co.*, 97 Wash. 444, 166 Pac. 779; *Western Dry Goods Co. v. Hamilton,* 86 Wash. 478, 150 Pac. 1171; *Colvin v. Clark,* 83 Wash. 376, 145 Pac. 419.

What we have said covers the first two assignments of error, and we will next proceed with number 3. It deals with the court's exclusion of certain testimony explanatory of certain unilateral letters or receipts. These certainly are not conclusively binding on the defendants Roesch, and the explanation should have been allowed in regard to the meaning of "$775 to be credited on account," in defendants Roesch's exhibit No. 4. The admission of this testimony would not

violate the rule that it would vary the effect of a written instrument and that such is the best evidence.

As to the next assigned error, the transaction was one relating to real estate. Defendants Roesch did not attempt to vary the effect of the deeds or written instruments, but attempted to show that the consideration received under those written instruments was held and received by Drake in trust for the Mercantile Funding Company, and that it was agreed that this consideration should be credited upon the notes. This we think, under well settled principles, should have been admitted, and without violating any rules affecting real estate transfers.

The fifth and sixth assignments of error relating to dormant partners may be discussed together. Neither were articles of co-partnership drawn, making the Mercantile Funding Company a limited partnership, as required by Rem. Code, §§ 8359 to 8368, nor was the certificate of assumed business name filed according to the statute, Rem. Code, § 8369. This would protect the public dealing with the partnership, and where such requirements have not been fulfilled, a dormant or silent partner must be considered as having acquiesced in and constituted the visible partners agents to act for the partnership. The rule is elementary that, where a dormant partner permits the business world to believe that the ostensible partners are the owners of the business, he is estopped from claiming to the contrary against those who have in good faith acted upon such appearance, and cannot be heard to insist that, under such circumstances, a creditor has not the right to set off his debt against such partnership. *Willey v. Crocker-Woolworth Nat. Bank,* 141 Cal. 508, 75 Pac. 106.

For the foregoing errors, the judgment will be reversed and the cause remanded for new trial.

PARKER and FULLERTON, JJ., concur.