(No. 6704.   May 6, 1940.)

HANNAH PETERSON, Appellant, v. BANNOCK COUNTY, a Municipal Corporation, Respondent.

[102 Pac. (2d) 647.]

H. J. Swanson, for Appellant.

Milton E. Zener and C. M. Jeffery, for Respondent.

MORGAN, J.—While attending the Bannock County Fair, appellant was knocked down and severely and permanently injured by a horse, the property of John Villanova, which was being ridden by Glen Hymas. She brought this action for damages against Villanova, Hymas and Bannock County. The county was made a defendant on the theory that it was negligent in failing to provide for the safety of those who attended the fair, and in permitting the horse to be ridden into a throng of people and against appellant. Villanova and the county answered separately. The default of Hymas for failure to answer was entered. At the close of testimony on behalf of plaintiff Villanova and the county each moved for a nonsuit, which was denied. When the introduction of evidence was completed Villanova renewed his motion for a nonsuit and the county moved for a directed verdict. The motions were denied. The case was submitted to the jury which rendered a verdict in favor of plaintiff against all defendants. Judgment was entered on the verdict and Villanova and the county each moved for judgment notwithstanding the verdict; also for a new trial. Villanova's motions were denied. The county's motion for a new trial

was denied and its motion for judgment notwithstanding the verdict was granted. Plaintiff has appealed from the order granting the county's motion for a judgment notwithstanding the verdict; also from the judgment in favor of the county.

Counsel for appellant argues that since the court had decided, in ruling on the county's motion for a directed verdict and in overruling its motion for a new trial (one of the grounds of which was that the court erred in overruling its motion for a directed verdict), that it was not entitled to a verdict and that, therefore, the court was without jurisdiction to grant the county judgment against appellant notwithstanding the verdict.

The denial of a directed verdict, and of a new trial, did not deprive the court of jurisdiction to enter a judgment notwithstanding the verdict, but laid the foundation for such judgment. Idaho Code Annotated, section 7–224 provides:

''When, at the close of the testimony, any party to the action moves the court to direct a verdict in his favor, and such motion is denied, upon a subsequent motion that judgment be entered, notwithstanding the verdict, or notwithstanding the jury has disagreed and been discharged, the court shall grant the same if the moving party was entitled to such direct verdict. . . . . ''

Section 7–602 relates to new trials and subsection 8 thereof is as follows:

''8. If in such application error is assigned in the denial upon the trial of a motion to direct a verdict, and the court upon said application for new trial determines that the motion to direct a verdict should have been granted, he may, in lieu of granting a new trial for such error, vacate any judgment that has theretofore been entered, and order a judgment for the moving party notwithstanding the verdict.''

The effect of these sections is to give the court, when it has erroneously refused to direct a verdict, opportunity to correct the error on motion for judgment notwithstanding verdict.

The remaining question is as to whether a county, being a political subdivision of the state, is liable for the

torts of its officers and agents while acting in its governmental capacity, since we have no statute expressly permitting it to be sued therefor.

In *Strickfaden v. Greencreek Highway Dist.*, 42 Ida. 738, 747, 248 Pac. 456, 457, 49 A. L. R. 1057, we said:

"Counties may be said to be true public corporations. They are local organizations, which for the purposes of civil administration are invested with a few functions characteristic of a corporate existence. They are legal political subdivisions of the state, created or superimposed by the sovereign power of the state of its own sovereign will, without any particular solicitation or consent of the people within the territory affected. . . . . "

We further said (42 Ida. 749, 248 Pac. 458):

"It is well settled that in the absence of an express statute to that effect, the state is not liable for damages either for nonperformance of its powers or for their improper exercise by those charged with their execution. Counties are generally likewise relieved from liability, for the same reason. They are involuntary subdivisions or arms of the state through which the state operates for convenience in the performance of its functions. In other words, the county is merely an agent of the state and since the state cannot be sued without its consent, neither may the agent be sued." In support of this statement, we cited: *Davis v. State,* 30 Ida. 137, 163 Pac. 373, Ann. Cas. 1918D, 911; *Worden v. Witt,* 4 Ida. 404, 39 Pac. 1114, 95 Am. St. 70; *Gorman v. County Commrs.,* 1 Ida. 655; *Davis v. Ada County,* 5 Ida. 126, 47 Pac. 93, 95 Am. St. 166; *Youmans v. Thornton,* 31 Ida. 10, 168 Pac. 1141; *Cassidy v. City of St. Joseph,* 247 Mo. 197, 152 S. W. 306, 307; *O'Brien v. Rockingham County,* 80 N. H. 522, 120 Atl. 254; *Mullinax v. Hambright,* 115 S. C. 22, 104 S. E. 309; *Dixon v. People,* 53 Colo. 527, 127 Pac. 930; 15 C. J., sec. 273, p. 569, and cases cited.

In the Strickfaden case, we also said:

"It is well recognized that there are two kinds of duties imposed or conferred upon municipal corporations; those termed public governmental functions, where the municipality performs certain duties as an agent or arm of the state; and those other municipal activities which are sometimes

termed administrative, ministerial, corporate, private, or proprietary functions, performed for the municipality's own benefit or for the benefit of its citizens, and while acting in the performance of its governmental functions or in a public capacity as an arm or agency of the state the municipality is not liable for its failure to exercise these powers or for their negligent exercise, unless such liability has been imposed by statute. . . . . ''

In *Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151, we held that the county, which was operating a hospital wherein it cared for its indigent sick, and also patients who were financially able to pay, and charged the latter for the accommodations, pursuant to a statute permitting it to do so, was, in caring for a pay patient, acting in a proprietary capacity and was liable to her for injury resulting from negligence of its employees. On rehearing of that case, 56 Ida. 138, 50 Pac. (2d) 603, 101 A. L. R. 1159; the distinction between governmental and proprietary activities of counties was pointed out. We said:

"The decision of this case rests upon the distinction between the discharge of governmental duties and the performance of proprietary or business engagements.

"It is the duty of the county to take care of the 'indigent sick and otherwise dependent poor.' It might discharge that duty directly or by contract. It was not bound to build a county hospital,—the legislature did not so command. Building and operating a hospital was optional and discretionary with the county. The fact that it did build and now maintains a hospital does not render the care for the indigent sick and poor in such institution any less a public and governmental duty. Having built the hospital and furnished and opened it for the discharge of its public and governmental duty, it had the power to utilize any extra or excess facilities it possessed for serving other sick persons not indigent but able to pay for the service. In serving such persons, however, it was not engaged in the discharge of its public and governmental duty but was rather engaging to that extent in a private and proprietary business for pay and at once assumed the same relation to such persons as would any privately owned hospital sustain toward a patient entering it

for hospital care. In the one case the public duty is imposed on the county as a governmental agency of the state to care for the indigent sick and poor of the county; in the other case no duty rests upon the county to care for those who are able to purchase their own care and attention. In the latter case the service and resultant duty is private and voluntarily assumed for pay; in the former it is not.

"Taxes may be levied and collected for payment of the expenses of governmentally imposed obligations; that may not be done for a purely private purpose or business. . . . . "

█ █ Bannock County Fair was organized, held and conducted pursuant to the provisions of Idaho Code Annotated, Title 22, chapter 2, sections 22–201 to 22–208, inclusive. Section 22–206 requires the fair board to make a budget of the amounts required for fair purposes and to deduct therefrom any balance remaining in the treasury and the probable income from the fair or fairs to be conducted during the current year, and to certify to the board of county commissioners the amount of the budget. That section provides:

"the amount to be raised by the county for fair purposes shall in no case be in excess of the difference between the total of said budget and the probable income of such fair and the balance on hand in the treasury. The board of county commissioners shall thereafter approve or make such amendments or modifications in the county fair budget as it deems proper, and include the same in its annual county budget. No levy for the purposes of this act shall exceed one-half mill on each dollar of assessed valuation of taxable property in the county. . . . . "

Section 22–207 provides that any moneys remaining on hand after the fair has been conducted shall not be paid into the general fund of the county, but must be retained in the custody of the treasurer of the fair board, and may be used in the conduct of a county fair in the succeeding year or years, and such moneys shall be paid into the general fund of the county on order of the board of county commissioners in case it shall at any time discontinue the holding of annual county fairs.

Bannock County Fair was not conducted for profit. No admission fee was charged those who attended it. If it had any revenue, other than that provided by taxation, the record does not show it. The county was acting in its governmental capacity, as an arm of the state, in conducting the fair, and it is not liable for injuries caused by the negligence of its officers and agents. (*Dillwood v. Riecks*, 42 Cal. App. 602, 184 Pac. 35; *A'Hern v. Iowa State Agricultural Soc.*, 91 Iowa, 97, 58 N. W. 1092, 24 A. L. R. 655; *Berman v. Minnesota State Agricultural Soc.*, 93 Minn. 125, 100 N. W. 732; *Morrison v. MacLaren*, 160 Wis. 621, 152 N. W. 475, L. R. A. 1915E, 469; *Hadler v. North West Agricultural etc. Assn.*, 61 N. D. 647, 239 N. W. 736.)

The judgment and order appealed from are affirmed. Costs are awarded to respondent.

Ailshie, C. J., and Holden, J., concur.

BUDGE, J., Concurring.—Still adhering to the views expressed in my dissenting opinion in *Henderson v. Twin Falls County*, 56 Ida. 124, at 141, 50 Pac. (2d) 597, 101 A. L. R. 1151, I concur in the foregoing opinion.

GIVENS, J., Concurring Specially.—Though not agreeing with, I recognize the holding in *Henderson v. Twin Falls County*, 56 Ida. 124 and 138, 50 Pac. (2d) 597, 101 A. L. R. 1151, because by a majority, and therefore the court, to be the law in this state. With such mental reservation I otherwise concur.