297 P.2d 287

James A. LAIDLAW and Florence C. Laidlaw, husband and wife, Plaintiffs-Respondents,

v.

Charles A. BARKER and Pacific Supply Cooperative, a corporation, Defendants-Appellants.

No. 8334.

Supreme Court of Idaho.

April 24, 1956.

As Modified on Denial of Rehearing

May 31, 1956.

Elam & Burke, Boise, Sherman J. Bell-
wood, Rupert, for appellants.

SMITH, Justice.

Respondents seek recovery of damages for the death of James A. Laidlaw, Jr., their 13-year old son, allegedly caused by the negligence of appellant Charles A. Barker, as an employee of appellant corporation, while operating an automobile.

Appellants, by their answer, admitted the operation of the automobile by appellant Barker in the scope of his employment, denied respondents' allegations of negligence, and affirmatively pleaded both contributory negligence of the Laidlaw boy and negligence of his father.

The trial court denied appellants' motions for nonsuit and for directed verdict. The jury returned a verdict in favor of respondents upon which the court entered judgment. The court thereafter denied appellants' motion for a new trial. Appellants have appealed from the judgment. They assign error of the trial court in denying their motions for nonsuit and for directed verdict, and assign insufficiency of the evidence to support the verdict, urging that the evidence shows that the Laidlaw

Ralph R. Breshears, Boise, Dean Kloepfer, Burley, for respondents.

boy was guilty of contributory negligence as a matter of law.

The pertinent facts and circumstances surrounding the fatal accident are hereinafter set forth.

U. S. Highway No. 30 North is an improved arterial state highway, a portion of which extends in a general easterly and westerly direction to and through the City of Rupert. The highway has an 80-foot right-of-way. It is intersected at right angles about one mile east of Rupert by a county road, having a 50-foot right-of-way, extending in a general northerly and southerly direction. The highway, at the times and places mentioned herein, at and for a considerable distance both east and west of the intersection was level and straight with an unobstructed view, and had posted thereon a daytime speed limit of 60 miles per hour. The intersecting county road was posted with stop signs both at the north and at the south border of the state highway right-of-way.

March 14, 1954, at about 2 o'clock P.M. respondents caused their band of sheep consisting of about 1,000 ewes and a like number of lambs to be driven northerly along the county road through said intersection. Respondent James A. Laidlaw was in charge of the sheep-moving operation. Two herders, respondents' employees, were in front of the band of sheep, and four herders, respondents' employees, and additionally the Laidlaw boy, were behind the band. Respondent Laidlaw stationed an employee Maxey east of the intersection near the north boundary of the highway, where Maxey flagged to a stop the westbound highway traffic, and respondent stationed himself west of said intersection and flagged to a stop the east-bound highway traffic. They halted some six to eight cars and trucks traveling east, and about the same number traveling west while the sheep were being driven northerly on the county road through the intersection.

Respondent Laidlaw released the vehicular traffic after the sheep had cleared the right-of-way of the highway. His testimony relating to his releasing the traffic and not further controlling it, appears as follows:

"Q. Now then, you kept, you controlled traffic there until you had the sheep clear from the highway and on to the north? A. Yes, sir.

"Q. And then after that time, you had no one at all controlling or having anything to do with traffic? A. No, sir."

Respondent Laidlaw's testimony shows that the sheep had cleared the 80-foot right-of-way of U. S. Highway No. 30, as follows:

"Q. Had the sheep entirely cleared the right-of-way at the time this occurred? A. The sheep had entirely cleared Highway 30. * * *

"Q. This 80-foot strip there * *?
A. The south end of the band of sheep was just about even with the north edge of the right-of-way which would place them roughly twenty-five feet north of the edge of the oil on the county road."

A herder was in charge of the sheep keeping any of them from straggling back onto the right-of-way of the highway.

Respondent Laidlaw testified that just prior to the accident, he and one of his employees stood at the north side of the highway about 30 feet west from the middle of the county road; a herder stood near the middle of the county road at the north boundary of the 80-foot right-of-way of the highway; his employee Maxey and the boy stood on the county road, south of highway 30. The sheep had cleared the 80-foot highway's right-of-way to the north.

Respondent Laidlaw testified that all the west-bound traffic had cleared the intersection; also, that the east-bound traffic had cleared the intersection, since from where he stood, looking easterly toward mail boxes situate on the south side of the highway and about 75 feet east from the intersection, the last of the cars going east appeared to have gone about as far as the mail boxes.

Respondent Laidlaw testified that when he first saw his boy just prior to the acci-

dent, the boy was coming across the highway and was within five feet of the point of impact. Then his testimony appears:

"Q. As a matter of fact he was running when you saw him, wasn't he?
A. Yes, sir."

The employee Forgeon, who was at the rear of the band of sheep keeping them from straggling back on to the right-of-way of Highway 30, testified that respondent Laidlaw and Maxey released the traffic when he "had the sheep off out of the way." He then stated that the traffic had cleared going both east and west, although he did not estimate how far the last of the east-bound traffic had proceeded east from the intersection. His testimony then appears:

"Q. Now, the boy, * * *, as he came across, he was running, wasn't he running fast? A. Yes; he was running.

* * * * * *

"Q. And he was headed straight across the highway, from south to north? A. Kind of slant-wise.

"Q. A little more to the west? A. Yes.

"Q. And he was looking straight ahead of him, wasn't he?

* * * * * *

"A. Yes.

"Q. He was not looking to his right toward any traffic that might be coming?

\*   \*   \*   \*   \*   \*

"A. Yes; that's right."

The employee Maxey testified that after the sheep had gone across the highway he released the west-bound traffic and then his testimony appears:

"Q. And then you didn't do anything to control traffic or watch traffic, or anything of that sort after that time? A. No, sir."

Mr. Maxey then took up a position on the south of the highway with the Laidlaw boy; both were some three to five feet south of the oil surface of highway 30. Just prior to the accident he turned to the south on the county road to pick up a lamb and place it in his employer's nearby pick-up truck and while so engaged he heard the impact. He testified with reference to the traffic as follows:

"Q. \* \* \* you could see the traffic coming from the east, could you? A. Yes; I could.

"Q. Was there anything in your way of seeing traffic coming from the east? A. No, sir; there wasn't."

Maxey further testified that there was nothing to interfere with the boy's vision at said time and place.

The sheriff of Minidoka County and his deputy ascertained that Barker had been driving variously between 50 and 60 miles per hour coming from Pocatello; also that Mr. Winegar, following Barker, noticed that both he and Barker were traveling around 50 or 55 miles per hour. The deputy sheriff ascertained from Barker that the boy appeared to come from behind a pick-up truck just prior to the accident. The accident occurred in the highway's north lane and in Barker's right-hand lane of traffic. The left-hand wheels of the Barker automobile were approximately 2 feet and nine inches north of the highway's white center line extending through the intersection.

The foregoing facts and circumstances in the main constituted respondents' case in chief, whereupon they rested.

Appellants thereupon moved for a non-suit, which the court denied. Appellants pointed to the evidence adduced by respondents as showing that the boy crossed highway 30 without yielding the right-of-way to on-coming traffic; that he didn't look before running across the highway and in front of the Barker car, although he had a clear view to his right, so that had he looked he could have seen the Barker car approaching; that he did not look either to his right or to his left when running across the highway.

Appellants developed facts and circumstances showing that Barker traveled at speeds between 50 and 55 miles per hour coming from Pocatello, and at about 55 miles per hour up to the near vicinity of the intersection; the boy appeared to Bar-

ker as coming from behind a pick-up truck; the boy was running, crossing the highway from the south to the north; when Barker first saw the boy, about 50 feet away, he applied his brakes; the boy at that time was about at the center line of the highway; Barker did not turn his car to the right or left when he applied his brakes; he was not going as fast as 55 miles an hour when he hit the boy because he had applied his brakes and slowed his car.

Appellants upon resting renewed their motion for nonsuit which the trial court denied. Appellants then moved for a directed verdict on the grounds set forth in the motion for nonsuit which the court denied.

The evidence as developed by respondents in their case in chief shows without dispute that from where the Laidlaw boy stood on the county road at the intersection, some 3 to 5 feet south of the oiled surface of highway 30, he had a clear view of the highway both to the east and to the west. Had he looked to his right he could have observed the on-coming Barker car, but without looking either to his right or to his left, he entered the highway at a run, and continued on his way running some 18 feet into the intersection, to a point beyond the highway's east-west center line. It was there that Barker's on-coming car struck the lad. Barker was traveling in his own right-hand lane of traffic, and was not exceeding the lawful speed limit. The traffic was not congested at the time and place as shown by respondent Laidlaw's own testimony. Barker struck the boy in a matter of some six-tenth to seven-teenths of a second, mathematically calculated, after he had seen the boy on the highway in front of his car.

Respondents developed the aspects of the excellent mental and physical characteristics of the Laidlaw boy. He was a normal, healthy, bright, intelligent 13-year old boy. Respondents also showed that the boy was experienced with sheep, in that he had accompanied his father and assisted with the sheep during week ends and during summer vacations from school. The day of the accident the boy accompanied his father, assisting with the sheep and, in the instance here, assisted in moving the sheep northerly on the county road, through the east-west arterial intersection.

The Laidlaw boy, under the circumstances aforesaid, either knew and understood the risk and danger of crossing an arterial highway intersection in which traffic was passing in and upon the highway, or as to respondents, that knowledge was imputed to the boy, since respondent Laidlaw just prior to the accident had withdrawn all control of the traffic on the arterial highway and had released the traffic to proceed, and it was proceeding, on its way, said respondent knowing that the boy was one of his "crew" in the sheep

moving operation, and then and there was in the immediate vicinity of said arterial highway, at the south border of said intersection.

A child of the age of the decedent boy is responsible for the exercise of such care and vigilance as reasonably may be expected of one of his age, intelligence and experience. Failure to exercise such degree of care is negligence. The fact that the boy may not have possessed the mature judgment of an adult did not excuse him from exercising the judgment and discretion he possessed or from heedlessly rushing into apparent and known danger.

The rule of contributory negligence is properly applicable to the boy. He was chargeable with that degree of care reasonably proportionate to his age and capacity. Denman v. Youngblood, 337 Mich. 383, 60 N.W.2d 170; Bird v. Meade, 281 Mich. 114, 274 N.W. 730; Duval v. Palmer, 113 Vt. 389, 34 A.2d 317; Brophy v. Milwaukee Electric R. & Transport Co., 251 Wis. 558, 30 N.W.2d 76; Raggio v. Mallory, 10 Cal.2d 723, 76 P.2d 660; Rizio v. Public Serv. Electric & G. Co., 128 N.J. L. 60, 23 A.2d 585; see also 174 A.L.R. 1164; 38 Am.Jur., Negligence, secs. 204 and 205, p. 884 et seq.; 65 C.J.S., Negligence, § 146, p. 788.

Contributory negligence is generally a question of fact for determination by the jury; but it becomes a question of law, authorizing a nonsuit or directed verdict where there is no other reasonable interpretation of the evidence except that the injured person was guilty of negligence which proximately caused or contributed to his injury. Donovan v. Boise City, 31 Idaho 324, 171 P. 670; Dale v. Jaeger, 44 Idaho 576, 258 P. 1081; Williamson v. Neitzel, 45 Idaho 39, 260 P. 689; Bennett v. Deaton, 57 Idaho 752, 68 P.2d 895; Bell v. Carlson, 75 Idaho 193, 270 P.2d 420; Rosevear v. Rees, 77 Idaho 270, 291 P.2d 856.

Contributory negligence on the part of the Laidlaw boy appears so conclusively that, as a matter of law, his representatives cannot be allowed a recovery. Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178.

Appellants assign error of the trial court in giving an instruction on the last clear chance doctrine, in favor of respondents and against appellants. That doctrine implies thought, appreciation, mental direction and lapse of sufficient time effectually so to act as to save another from injury to which he has negligently exposed himself. It is not applicable where the emergency is so sudden that there is no time to avert the accident. In the case here, the act which created the peril occurred at practically the same time as the accident in that only six-tenths to seven-tenths of a second, mathematically

calculated, elapsed from the time the Laidlaw boy's peril became apparent to appellant Barker before the accident; under the circumstance appellants did not have a last clear chance to avoid the accident. The last clear chance must be a clear one. Short v. Boise Valley Traction Co., 38 Idaho 593, 599, 225 P. 398; McIntire v. Oregon Short Line R. Co., 56 Idaho 392, 397, 55 P.2d 148; Stearns v. Graves, 62 Idaho 312, 322–323, 111 P.2d 882; Ineas v. Union Pac. R. Co., supra; Matheson v. Idaho Hardware & Plumbing Co., 75 Idaho 171, 179, 270 P.2d 841; Graham v. Milsap, 77 Idaho 179, 290 P.2d 744; 38 Am.Jur., Negligence, sec. 219, p. 950; 65 C.J.S., Negligence, § 137e, p. 774.

Though the trial court committed error in giving the instruction it is not reversible; for appellants invited the error by requesting an instruction, also given by the trial court, on the last clear chance doctrine, in favor of appellants and against respondents.

We deem it unnecessary to consider appellants' further assignments of error.

The judgment of the trial court is reversed and the cause remanded with directions to dismiss the action. Costs to appellants.

Petition for rehearing denied.

TAYLOR, C. J., and KEETON and ANDERSON, JJ., concur.

PORTER, J., dissents.