351 P.2d 464

Alfonzo RALPH and Beatrice Ralph, husband and wife, Plaintiffs-Appellants,

v.

UNION PACIFIC RAILROAD COMPANY, a corporation, and W. E. Gaffner and Victor Hill, Defendants-Respondents.

No. 8778.

Supreme Court of Idaho.

March 23, 1960.

Rehearing Denied May 10, 1960.

Kramer & Walker, Twin Falls, for appellants.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson, E. C. Phoenix and D. A. Bybee, Pocatello, for respondents.

SMITH, Justice.

Plaintiffs, appellants, instituted this action to recover general and special damages arising from a collision between appellants' automobile operated by Beatrice Ralph and a train of respondent railroad company. The accident occurred about 1:15 o'clock a. m., October 18, 1957, at a crossing approximately seven and one-half miles southwest of Twin Falls, on U. S. Highway 93.

At the conclusion of the evidence the trial court denied defendants', respondents', motion for a directed verdict. The cause having been submitted, the jury returned a verdict of $10,000 in favor of appellants.

The court entered judgment accordingly.

Subsequently, respondents moved for judgment notwithstanding the verdict, which the court granted December 31, 1958, thereby vacating the judgment previously entered upon the verdict. Appellants then moved for an order vacating the judgment notwithstanding the verdict, which the court denied. Appellants have appealed from the judgment notwithstanding the verdict and from the order denying their motion to vacate such judgment.

Appellants assign as errors the trial court's entry of the judgment notwithstanding the verdict, and the order denying appellants' motion to vacate the judgment, in each instance without supporting findings of fact and conclusions of law.

■■ A motion for judgment notwithstanding the verdict is a delayed motion for a directed verdict; such motion affords the trial court opportunity to correct its previous refusal to grant a motion for a directed verdict, if erroneous. I.C. § 10–224; Peterson v. Bannock County, 61 Idaho 419, 102 P.2d 647. "When a directed verdict is had findings of fact and conclusions of law are not necessary." Farm Credit Corporation v. Rigby Nat. Bank, 49 Idaho 444, 290 P. 211, 214. Clearly, the identical procedure applies to a judgment notwithstanding the verdict, particularly where, as here, the judgment does not grant affirmative relief. Hanson v. Roesch, 104

Wash. 257, 176 P. 349. Appellants' assignments of error in the premises are without merit.

■ Appellants, by further assignment, urge the insufficiency of the evidence to support the judgment notwithstanding the verdict. This assignment requires a review of the evidence in its aspects most favorable to appellants, particularly as developed in their case in chief. Hobbs v. Union Pacific R. Co., 62 Idaho 58, 108 P. 2d 841.

The grounds of respondents' motion for judgment notwithstanding the verdict are: that there is no evidence to support the allegations of negligence on respondents' part; that even if there is evidence of any such negligence, there is no evidence that the same constituted the sole proximate cause of Mrs. Ralph's injuries; that there is no evidence justifying the application of the last clear chance doctrine; and lastly, the evidence is sufficient to show that negligence on the part of Mrs. Ralph proximately caused or proximately contributed in a substantial degree to her injuries.

U. S. Highway 93 extends north and south and the railroad crosses it at an angle extended northeasterly and southwesterly. Highway 74 branches off Highway 93 at a point about 340 feet south of the crossing and extends northeasterly, parallel to the railroad. The "Y" intersection of the two highways is about 25° to 30°. An automobile can be driven without swerving from its driver's own lane from Highway 93 onto Highway 74 at speeds of 60 miles or more.

About 1,200 feet south of the crossing there is a circular warning railroad "X" sign on the east side of the highway; about halfway between that sign and the crossing there is a railroad "R X R" sign painted in large letters on the pavement, and about 550 feet south of the crossing there is still another circular railroad warning sign; also at the crossing near the railroad, both at the right-hand side of the highway extending north, and the left-hand side of the highway extending south, are railroad "cross-buck" signs. The headlights of a car "would pick up those signs" because they are coated with luminous or reflectorized paint which causes the signs to stand out and be seen as far as an automobile headlights will carry—perhaps 500 feet ahead in the high beams.

There is a small clump of four trees on the east side of Highway 74 at a point some 350 feet south of the crossing which would only momentarily obstruct a motorist's view of an approaching train at various points, but not beyond the 350 feet south of the crossing.

Appellants produced a bus driver, familiar with the route. He testified that a train's headlights, seen to the east, might be confused with those of a motor vehicle

when the lights and the traveler were quite far apart, the traveler going north; but that the nearer the motorist gets to Highway 74 the easier it is to distinguish a train's headlights; that as one approaches the intersection of Highways 93 and 74 (some 340 feet south of the crossing), the train's headlights are higher than and easily distinguishable from an auto's headlights; that the train's headlights are very bright and shine onto Highway 93 and the fields at the west; that there are no houses in the vicinity to obstruct a motorist's view.

The bus driver's further testimony has to do with the question whether respondents sounded a whistle or bell prior to entry upon the crossing. The witness stated that the early morning of the accident he was driving a bus north on Highway 93, when he slowed the bus to about 40 miles an hour, pulled to the right side of the highway and blinked for appellants' car to pass, which it did; that then he increased the speed of the bus to 50 and 55 miles per hour; that appellants' car, driven north toward the crossing, forged ahead of the bus three-fourths of a mile to a mile; that he did not see the train approaching the crossing; that he was traveling inside a closed bus, did not hear the sound of a bell or whistle, was not listening for any such sound, did not see the accident, and that he was "at least a mile" from the crossing; that the night though dark was clear, the terrain was flat and the view unobstructed.

Appellants produced for cross-examination under I.C. § 9–1206, respondent Hill, the railroad fireman. He testified as to the occurrence of the accident; that he first observed appellants' automobile approaching from the south at an estimated distance of about half a mile from the crossing; that the train then was between 1,250 and 1,600 feet (referring to known points on the railroad) from the crossing, traveling southwesterly at a speed between 30 to 35 miles per hour; that it did not appear to Hill that the approaching automobile would fail to slow down, or to turn northeasterly onto Highway 74 at a point about 340 feet south of the crossing; that appellant Mrs. Ralph did not reduce the speed of the automobile as she approached the crossing.

There is no direct evidence of the speed at which appellants' automobile approached the crossing; however, the automobile and the train reached the crossing at the same time, although the automobile, after Hill first observed it, traveled approximately twice the distance to the crossing, as did the train; nor was there any evidence of skid marks on the highway south of the crossing to indicate that Mrs. Ralph applied the brakes of the car prior to the accident.

The evidence also shows that the view of a traveler, approaching the crossing

from the south, is clear; the terrain is flat and affords, for a mile to the south of the crossing, an unobstructed view of an approaching train; that Mrs. Ralph traveled this highway and traversed the particular crossing at sundry times before the night of the accident and had crossed it again a few hours prior to the time of the accident.

Appellants, contending that the judgment notwithstanding the verdict was erroneously entered, assert that respondents were guilty of negligence; whereas respondents assert the correctness of such judgment, inasmuch as Mrs. Ralph's negligence defeated recovery to appellants.

■ The question of negligence may be one of law or law and fact. The rule is stated in Wheeler v. Oregon R. & Navigation Co., 16 Idaho 375, 102 P. 347, 353, as follows:

"If from the evidence different minds of responsible and prudent men might come to different conclusions, as to whether there was negligence, then the question is one of fact to be submitted to the jury under proper instructions; but, if only one conclusion is deducible from the facts, then the question becomes purely a question of law."

■ In considering the question whether respondents sounded a bell or whistle in approaching the crossing, we are quite aware of the negative aspect of the testimony of appellants' witness, the bus driver, and of the positive testimony of respondents' witness, the railroad fireman, adduced as if under cross-examination by appellants, I.C. § 9–1206. Negative evidence is entitled to consideration unless it "is so destitute of probative value that it will not be received." Kerby v. Oregon Short Line R. Co., 45 Idaho 636, 264 P. 377, 380. The application of this rule shows the inherent weakness of the testimony of the bus driver; his testimony does not negate nor render improbable the fact that respondents sounded the train whistle in approaching the crossing, simply because he, the bus driver, was not in a position to hear the whistle, being in the closed cab of his bus and at least a mile distant from the train as it approached the crossing.

We must assume facts however most favorable to appellants first that respondents failed to sound a bell or whistle in approaching the crossing in the face of respondents' assertion that they did and second that appellant Mrs. Ralph was not exceeding the nighttime prima facie speed limit of 55 miles per hour, I.C. § 49–701.

■ I.C. § 62–412 requires each locomotive engine to be equipped with a bell of at least twenty pounds weight, to be rung at a distance of at least 80 rods from the place where the railroad crosses any street, road or highway, and kept ringing until

it has crossed such street, road or highway; or an adequate steam, air, electric or other similar whistle to be attached, to be sounded and kept sounding at intervals under like circumstances, except in cities, and renders the railroad corporation liable for damages for injuries caused to any person by the railroad's failure to comply with such statutory provisions. Construing such section of the statute, this Court in Wheeler v. Oregon R. & Navigation Co., 16 Idaho 375, 394, 102 P. 347, 353, announced the following rule:

"While this section provides that a railway is liable for all damages sustained by any person caused by a locomotive, train, or cars, when a bell is not sounded or a whistle blown, still it does not abrogate the doctrine of contributory negligence or operate to give a right of action where the negligence of the plaintiff contributed to, and was the proximate cause of the injury."

See also Rippetoe v. Feely, 20 Idaho 619, 119 P. 465.

Though a violation of the statute on the part of the railroad may constitute negligence per se, Hobbs v. Union Pacific R. Co., 62 Idaho 58, 108 P.2d 841, manifestly for the railroad to be liable for the injuries, the law implies that the cause of the injuries must be the negligence of the railroad and not the negligence of the injured. And while the injured person may make his case by showing negligence, i. e., the negligence of noncompliance with the law, I.C. § 62–412, and the injury, nevertheless, as stated in Wheeler v. Oregon R. & Navigation Co., supra:

"* * * this statute [I.C. § 62–412] does not, however, deny the right to the defendant to show that the plaintiff is not entitled to recover because of contributory negligence on the part of the plaintiff which was the proximate cause or one of the proximate causes of the injury. This rule recognizes the right of a defendant charged with negligence to defend upon the ground of nonliability by reason of contributory negligence on the part of the plaintiff. [Citations]."

▇ I.C. § 49–747 recognizes the duty of a driver of a motor vehicle when approaching a railroad grade crossing to look and to listen, and to stop for an approaching train, and failure so to do constitutes negligence per se. This section of the statute provides in part:

"Railroad grade crossing—Obedience to signal indicating approach of train.—(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 but not less than 15 feet from the

nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

\*　　\*　　\*　　\*　　\*　　\*

"4. An approaching railroad train is plainly visible and is in hazardous proximity to such crossing."

In addition, I.C. § 49–701 in part provides:

"Basic rule and prima facie limits.— (a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.

In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

\*　　\*　　\*　　\*　　\*　　\*

"(c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

An enunciation of these basic statutory rules is contained in Chicago, Rock Island & Pacific R. Co. v. Houston, 5 Otto 697, 95 U.S. 697, 24 L.Ed. 542, as follows:

"He is bound to use his senses—to listen and to look—before attempting to cross the railroad track, in order to avoid any possible accident from an approaching train. If he omit to use them, and walk thoughtlessly upon the track, he is guilty of culpable negligence; and if he receive any injury, he so far contributes to it as to deprive him of any right to complain. If, using them, he sees the train coming and undertakes to cross the track instead of waiting for the train to pass, and is injured, the consequences of his mistake and temerity cannot be cast upon the railroad company. If one chooses in such a position to take risks, he must bear the possible consequences of his failure."

These basic rules require, merely, that a person use his senses and that he drive his motor vehicle in a reasonable and prudent manner; and when coming up to a railroad grade crossing, that he look and listen, and stop until he can pass safely; and if he does not, and proceeds thoughtlessly upon the tracks, and thereby receives injury,

his contributory negligence will forbid recovery, provided he was in a position that he could have looked, listened and stopped. See Hobbs v. Union Pacific R. Co., 62 Idaho 58, 108 P.2d 841; Stowers v. Union Pac. R. Co., 72 Idaho 87, 237 P.2d 1041.

Mrs. Ralph drove her car northerly on U. S. Highway 93 toward the railroad crossing. The surrounding terrain was flat and the view unobstructed. One could, if using his senses, discern for at least a mile away the approach of a train to the crossing. The four trees, some 350 feet south of the crossing, could not even momentarily obstruct a motorist's view of an approaching train, during that last 350 feet of the highway to the crossing.

The four reflectorized railroad signs warned a north bound motorist from a point commencing some 1,200 feet south of, and continuing up to, the crossing. Under the facts and circumstances and particularly her unobstructed view of the railroad crossing and of any approaching railroad train, Mrs. Ralph was in a position to look, listen and discern, and to stop at the crossing until she could safely pass on. Even so, she did not slacken the speed of the automobile in driving up and onto the crossing.

■ We have assumed, for the purpose of testing the correctness of the ruling of the trial court in granting the motion for judgment notwithstanding the verdict, that respondents may have been negligent in failing to sound a bell or whistle in approaching the crossing. Even so, the contributory negligence of appellant Mrs. Ralph appears so conclusively that, as a matter of law, we are constrained to hold that the trial court committed no error in the premises, and that, therefore, appellants cannot be allowed a recovery. Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178; Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287, 291.

The rule is stated in Laidlaw v. Barker, supra, amply supported by authorities, as follows:

"Contributory negligence is generally a question of fact for determination by the jury; but it becomes a question of law authorizing a nonsuit or directed verdict where there is no other reasonable interpretation of the evidence except that the injured person was guilty of negligence which proximately caused or contributed to his injury."

There remains for consideration the question whether the doctrine of the last clear chance became applicable under the facts and circumstances.

■ The doctrine of last clear chance of necessity admits an avenue of escape from the consequences of the contributory negligence of the proponent of the doctrine. This theory is recognized in Rippe-

toe v. Feely, 20 Idaho 619, 637, 119 P. 465, 472, as follows:

"If, then, the plaintiff contributes to the injury which he received at the hands of the defendant by his own want of ordinary care in placing himself in a dangerous place where he might be injured, and did not exercise ordinary care in preventing the accident after he had so placed himself in such position, then the mere fact that the defendant was negligent in not blowing a whistle would not relieve the plaintiff from the effect of his contributory negligence, unless it also appears that the defendant, after discovering plaintiff's dangerous position could have avoided the consequences of the plaintiff's negligence; that is, could have avoided the injury which took place by the exercise of ordinary care."

The train, traveling southeasterly at 30 to 35 miles an hour, was between 1,200 and 1,600 feet from the crossing when respondent Hill saw appellants' automobile on Highway 93 approaching from the south. It was not until the automobile had reached the "Y" of the two highways, about 340 feet south of the crossing, that there appeared to be any cause for concern. When Hill observed that the approaching automobile did not turn onto Highway 74 but, without slackening its speed, continued to approach the railroad crossing, he hollered to

the engineer to "big hole it," meaning to place the air brakes in emergency, which the engineer did, but the collision occurred.

There is no contention that the railroad engineer failed to do what he could or should have done to bring the train to a stop, or that the railroad equipment was out of repair or defective. There is no evidence of the time or distance required to stop a train of the length or weight of the train involved, when traveling at a speed of 30 to 35 miles an hour; nor is there any evidence that Mrs. Ralph made any attempt to stop the automobile. The evidence simply shows that Mrs. Ralph did not slacken her speed.

Nor can it be said that Mrs. Ralph was in a position of peril at a point 340 feet south of the crossing; for at the speed she was traveling she could have observed the statutory admonitions of I.C. §§ 49–747(a) 4 and 49–701, in coming up to the railroad crossing. Only after she continued to approach the crossing without slackening her speed, did she enter into the realm of peril, and in a brief moment traveled the remaining distance, again without slackening her speed, onto the railroad tracks and in the path of the approaching train.

In McIntire v. Oregon Short Line R. Co., 56 Idaho 392, 397, 55 P.2d 148, 149, this Court, quoting from Short v. Boise Valley Traction Co., 38 Idaho 593, 225 P.

398, stated the doctrine of last clear chance as follows:

"\* \* \* If the one party (here appellant) knows of the peril of the other, (respondent) although brought about by that other's (respondent) negligence, in time to avoid injuring him, he is at once put to a degree of care commensurate with the present situation of the parties. \* \* \*."

And continuing its analysis, the Court said:

"Analyzing the statement gives this initial requirement for application of the doctrine: That appellant must have perceived respondent's peril at a time when respondent could not have saved himself and in time for appellant to have avoided the accident. Here appellant did not perceive respondent's peril and respondent was in no peril until *respondent was upon or so close to the track that he could not stop, which, beyond any dispute, was at a time when the train could not have been stopped before passing the crossing.*" (Emphasis supplied.)

A recent expression of the application of the doctrine appears in Laidlaw v. Barker, 78 Idaho 67, 74, 297 P.2d 287, 291, supported by a wealth of authorities, as follows:

"\* \* \* That doctrine [last clear chance] implies thought, appreciation, mental direction and lapse of sufficient time effectually so to act as to save another from injury to which he has negligently exposed himself. It is not applicable where the emergency is so sudden that there is no time to avert the accident. \* \* \* The last clear chance must be a clear one."

In McIntire v. Oregon Short Line R. Co., supra, this Court announced the further rule:

"Trains are under no legal obligation to stop or slow up for a crossing when the operators thereof merely see an automobile approaching and there is still time and opportunity for the automobile to stop before being in a position of peril and there is nothing to indicate that the driver of the automobile is not going to do so. [Citations.]"

See also Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178; I.C. §§ 49–747 and 49–701.

██ The facts of this case do not justify the application of the last clear chance doctrine.

The judgment is affirmed. Costs to respondents.

TAYLOR, C. J., and KNUDSON and McQUADE, JJ., concur.

PORTER, C. J., did not participate.

On Denial of Petition for Rehearing.

SMITH, Justice.

Appellants in their petition for rehearing, again urging application of the last clear chance doctrine, stress certain testimony of respondent railroad engineer, to the effect that the train had approached to about 20 to 25 feet of the railroad crossing before he acted to avoid the pending accident, upon receiving warning from respondent railroad fireman to "big hole" the engine, i. e., place the brakes in emergency position.

We again refer to the fireman's testimony, that it was not until the Ralph automobile was at the "Y" of Highways Nos. 93 and 74, about 340 feet south of the railroad crossing, that there appeared to the fireman to be any cause for concern, when the automobile, without slackening its speed, continued its northerly course on Highway No. 93 toward the crossing.

We again point out that the time elements were short for stopping either the train or the automobile. The train consisting of nine cars was approximately 400 feet in length and when stopped, according to the engineer, "the rear end of the train was 400 feet across the crossing," (pointed to in the petition for rehearing). The Ralph automobile, continuing its course toward the crossing, was traveling at a speed of not less than 55 miles per hour.

Here, the train was traveling at the rate of speed of 30 to 35 miles per hour or 44 to 51 feet a second, and the automobile at the rate of speed of not less than 73 feet a second. Additionally it is a well known fact that the reaction of an individual to a stimulus involves a time factor,—in this case the reactions of both the fireman and the engineer.

The time involved was three seconds at the most from the time the fireman observed the Ralph car continuing north toward the crossing, when he hollered to the engineer to place the brakes in emergency position, to the time when the engineer reacted.

Again we point out, in order that the last clear chance doctrine have application, "the last clear chance must be a clear one." Laidlaw v. Barker, 78 Idaho 67, 75, 297 P.2d 287, 291. Here, if there was a last chance, we are unable to discern it to have been a clear one.

The petition for rehearing is denied.

TAYLOR, C. J., and KNUDSON and McQUADE, JJ., concur.