Patrick D. MORAN and Essie M. Moran,
Appellants,

v.

WASHINGTON, IDAHO AND MONTANA RAILROAD COMPANY,
a Corporation, Appellee.

No. 16653.

United States Court of Appeals
Ninth Circuit.

June 28, 1960.

Rehearing Denied Aug. 1, 1960.

Cope R. Gale, Moscow, Idaho, Swayne & McNichols, Orfino, Idaho, for appellants.

Clements & Clements, V. R. Clements, Reed Clements, Lewiston, Idaho, for appellee.

Before BONE, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

Gary Anderson Moran, 18-year-old son of appellants, was killed in a crossing collision between a pickup truck in which he was riding as a guest passenger and the engine of a logging train owned and operated by appellee. The accident took place at a point in Idaho on State Highway No. 8 near Bovill, Idaho, where the highway is crossed at approximately a right angle by the railroad tracks of appellee.

Appellants filed an action for damages against appellee in the United States District Court for the District of Idaho. The action was tried by a jury which rendered a verdict for appellants in the sum of $5,000.

Appellee, having moved for a directed verdict at the close of the evidence, moved for judgment notwithstanding the verdict, and the District Court granted said motion, set aside the jury's verdict, and entered judgment for appellee. This appeal is from said order of the District Court.

Jurisdiction was in the District Court by reason of diversity of citizenship, and jurisdiction is in this Court under 28 U.S.C.A. § 1291.

An examination of the record discloses the following facts. The decedent resided with his parents, the appellants, at Bovill, Idaho, and attended a high school

at Deary, Idaho. Normally, the decedent traveled to high school daily by means of a school bus. On the morning of the accident the decedent proceeded to the school bus stop, and while there a friend of his, Kenneth White, drove up in his father's 1951 Chevrolet pickup truck and offered to give decedent and another boy, named Wendell Boyce, a ride to school, which offer was accepted. The three boys in the pickup truck then proceeded along State Highway No. 8, shortly before 8 a. m., for the high school at Deary with White driving, Boyce in the middle, and the decedent on the right hand side of the pickup. About five miles from Bovill, State Highway No. 8 runs generally in a north and south direction and is crossed by the tracks of the appellee which run generally in an east and west direction. The pickup truck was traveling in a southerly direction, and for the last six or seven hundred feet before the tracks are reached, there is a straight approach somewhat down hill toward the tracks.

White testified that as the pickup approached the vicinity of the crossing he was going about 30 or 35 miles an hour, that the radio was not being played, and that there was no unusual noise in the pickup. The door window on the driver's side was rolled down from the top an inch or so, and the driver was observing the road.

A train approaching from the driver's left comes out of a cut, and is not visible to a driver until the engine emerges from the cut some 75 to 100 feet from the crossing. No automatic lighted or moving warning signals were in use at the intersection. There was, however, a white stationary crossarm at the southeast corner of the intersection. The white stationary crossarm, which had

been some time prior thereto at the northwest corner of the crossing, was down on the ground and apparently, by reason of some construction on the road, had been down on the ground for some time. There was no flagman on duty at the crossing. The testimony of White and of Boyce was that when the truck was approximately 175 to 200 feet from the crossing, the decedent and Boyce both called out a warning to the driver of the truck and he immediately applied his brakes.[1] There was a gravel surface on the road and there were skid marks of approximately 168 feet running in a straight line up to the point of collision with the engine. The pickup truck was almost stopped at the time that it ran into the side of the engine. As a result of the collision, the pickup was carried to its right and rolled over an embankment. It was stipulated that the decedent was killed as a result of this collision. White, the driver, testified that when he was 175 to 200 feet from the crossing, the train "popped out of the cut" and that prior thereto he had heard no warning horn or whistle of the train and did not believe one was sounded. Boyce also testified that he did not hear any warning horn or whistle of the train. There was testimony that the train was traveling approximately 24 miles per hour. At 36 feet per second, the train would only require some two or three seconds to travel the distance from where it was visible coming out of the cut to the point of collision.

Both the driver of the truck and the decedent had traveled over the road in question on many occasions before the accident. When the decedent rode to school on the school bus, the bus always stopped at the crossing. A state law required such a stop by a school bus.[2]

<hr/>

1. "Q. What can you remember of Gary Moran saying to Kenneth White at any time that morning, in the car? A. (by Wendell Boyce) Gary said, 'there's the train.'

"Q. That's all you can remember? A. Well, no, Gary yelled at him twice, I yelled once and Gary yelled twice.

"Q. And the train was in sight of both of you at that time? A. Yes."

2. "Q. When you drive the school bus do you stop always at that crossing? A. Yes.

"Q. Is that the result of a state law? A. Yes, it is.

"Q. When you drive your own car do you stop there? A. Not ever, I am afraid."

The driver of the school bus said that in three years' driving almost every day over the crossing, he had seen the train there approximately a dozen times. He testified further:

"Q. My point is * * * does that train come by there on very close schedule? A. [by bus driver] Compared to mine, no."

The train was a logging train and did not run the year around. There were days on which it did not operate. It went by the crossing in question at different times, depending upon how much work had to be done, approximately once a day in each direction.

The Idaho statute requires that a bell "must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road or highway; or an adequate steam, air, electric or other similar whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same, * * *". The statute also provides "The corporation is also liable for all damages sustained by any person, and caused by its locomotives, trains or cars, when the provisions of this section are not complied with." I.C. § 62–412.

The train personnel, witnesses for the appellee, testified that a whistle was blown approximately a quarter of a mile from the crossing and that it was blown at intervals thereafter up until the time the train started to use its brakes.

It is conceded by appellee that upon a motion for a directed verdict appellants were entitled to have the evidence viewed in a light most advantageous to them. With this rule in mind, we turn to the question of whether or not there was evidence of the railroad's negligence which would be sufficient to be considered by the jury.

Concerning the question of whether the whistle was blown or not, we have on one side the negative testimony of the truck driver and his passenger that they did not hear the whistle, and on the other side the positive testimony of the trainmen that the whistle was blown. This question was considered recently by the Supreme Court of Idaho in Ralph v. Union Pac. R. Co., Idaho, 351 P.2d 464, 467. The Court said:

"In considering the question whether respondents sounded a bell or whistle in approaching the crossing, we are quite aware of the negative aspect of the testimony of appellants' witness, the bus driver, and of the positive testimony of respondents' witness, the railroad fireman * * *. Negative evidence is entitled to consideration unless it 'is so destitute of probative value that it will not be received.' Kerby v. Oregon Short Line R. Co., 45 Idaho 636, 264 P. 377 * * *.

"We must assume facts however most favorable to appellants first that respondents failed to sound a bell or whistle in approaching the crossing in the face of respondents' assertion that they did * * *."

■ The District Court, in granting the motion notwithstanding the verdict, held that "The sole proximate cause of this accident * * * was the negligence of the driver of the truck in failing to heed the warning of the railroad crossing; to look and listen for approaching trains and, if necessary, to stop." In this case, however, it is and of course must be conceded that the negligence, if any, of the driver of the truck is not to be imputed to the decedent.

■ The decedent, of course, was required to exercise ordinary care for his own safety. Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178, 1189. None of the cases cited by appellee put upon a passenger in an automobile any greater duty than to exercise ordinary care under all the circumstances.

The District Court, in making its ruling, stated that it was "of the opinion that this case comes directly within the ruling in the Ineas case where the Su-

preme Court said that the Motion for nonsuit should have been granted."

An examination, however, of the Ineas case, shows that the facts there under consideration were far different than those in the instant case.

In the Ineas case, Ineas was a passenger in a state truck which was traveling at a speed between three and five miles an hour, about as fast as a man could walk. The approaching train was clearly visible, the right hand door of the truck contained a canvas completely covering the window part of the door in the place of glass, and the truck failed to stop at a highway stop sign.

In Ineas, the jury rendered a verdict in favor of the railroad and on appeal this judgment was sustained. The Court pointed out in its opinion that Ineas had been guilty of contributory negligence which consisted of "riding in the truck completely aware of two violations of express statutes, the canvas in the window, not stopping at the stop sign, and the further fact that the train was perfectly and clearly visible to him had he been exercising .a modicum of the due care and caution which rested upon him as a passenger, without any imputation to him of the negligence of the driver. At the speed the truck was traveling, between three and at the most five miles per hour, Ineas could have gotten out of the truck at any time after the truck turned on to Greenwood Street, before it was hit." The Court then said, "It is therefore, apparent contributory negligence * * * of Ineas appears so conclusively that as a matter of law, his representatives may not recover."

The facts in the present case are not at all comparable with those in the Ineas case. In this case, the train approached from a cut on the left and was not visible to one approaching in an automobile until it had emerged from that cut approximately 75 or 100 feet from the crossing. The train ran at irregular inter-

vals. It apparently had no regular schedule. Taking the evidence most favorably to appellants, we must assume that no whistle or bell on the train was sounded which would indicate a train was approaching. As soon as the engine of the train appeared in view, decedent sounded a warning to the driver, who immediately applied his brakes while going at a lawful speed of approximately 30 to 35 miles an hour.

 Normally, the question of the contributory negligence of a passenger is a question of fact. In Stowers v. Union Pac. R. Co.,[3] 72 Idaho 87, 237 P.2d 1041, 1045, the Court said:

"The question of the existence of negligence and contributory negligence only becomes a question of law when the evidence is susceptible of no other reasonable interpretation than that the conduct of the injured party contributed to his injury and that because of his negligence and carelessness he did not act as a reasonably prudent person would have acted under the circumstances * *.

"In determining the question of contributory negligence, due care or ordinary prudence under the circumstances is the only test. The presence or absence of contributory negligence must be judged by the conditions, circumstances and surroundings at the time of the accident and whether under such the person acted as a reasonably prudent person would have acted * *.

"It is ordinarily a question for the jury whether a person injured exercised due care in looking and listening where his view or his hearing is obstructed by darkness or dust or wind, or by a combination of two or more of these conditions * *."

 It appears to us that under the evidence in this case reasonable minds could differ as to whether or not the decedent in this case exercised ordinary

---

3. In this case the jury returned a verdict for the plaintiffs and the Court granted a judgment for defendant notwithstanding the verdict. Plaintiffs appealed, and the Supreme Court of Idaho reversed.

care for his own safety, and that the matter should have been left to the determination of the jury. It cannot be said as a matter of law that decedent exercised no care for his own safety or was riding in the truck blindly without observing conditions about him. Assuming, as we must assume, that no warning was sounded by the train, it was shown that the decedent was alert enough to call a warning to the driver as soon as the train emerged into view from the cut. We hold that it cannot be said that the decedent was guilty of contributory negligence as a matter of law.

The judgment of the District Court is reversed with instructions to reinstate the jury verdict.