454 P.2d 951

Wilma COREY, a widow, Kay Holman, Charles Corey, Don Corey and Grant Corey, all of the heirs of Grant E. Corey, Deceased, Plaintiffs-Respondents,

v.

W. Wray WILSON, Defendant-Appellant.

No. 10221.

Supreme Court of Idaho.

May 28, 1969.

E. L. Miller, Coeur d'Alene, for appellant.

Thomas A. Mitchell, Coeur d'Alene, for appellee.

DONALDSON, Justice.

Plaintiffs (respondents) Wilma Corey, widow of the decedent, Grant E. Corey, and Kay Holman, Charles Corey, Don Corey and Grant Corey, children of the decedent, brought this action to recover damages against defendant (appellant) Dr. W. Wray Wilson, alleging that on February 22, 1965, Grant E. Corey died as a result of defendant's negligence.

Defendant, a medical doctor, had been decedent's physician since 1958. In 1963 an operation was performed by defendant and other physicians resulting in removal of decedent's appendix and gall bladder. Defendant was in charge of the operation. It is undisputed that during the operation a hemostat was left inside decedent's body. Defendant continued to treat decedent until February 18, 1965, when decedent complained of severe abdominal pains. X-rays were taken which for the first time revealed the presence of the hemostat within decedent's body. Decedent was then 63 years old and had had a history of diabetes, rheumatic fever and heart attacks. He died on February 22, 1965.

An autopsy was performed with Dr. Wilson in attendance. It revealed, among other things, that 14 inches of the small intestine, known as the ileum or small bowel had herniated through a steel finger ring on the hemostat, had formed a loop, and had passed out through the finger ring. The herniation had caused a reduction in the blood supply ("infarction") to the ileum and necrosis (localized dying of living tissue) had commenced.

Based on the autopsy by Dr. Koenen, the pathologist, Dr. Wilson as attending physician signed a death certificate on which he wrote under the printed heading, "DISEASE OR CONDITION DIRECTLY LEADING TO DEATH," "cardiac decompensation" due to "marked hypertrophy [enlargement] of heart" and "marked aortic and mitral stenosis [narrowing of two of the heart's primary valves]." On the death certificate he also wrote under the printed heading, "OTHER SIGNIFICANT CONDITIONS *Conditions contributing to death but not related to the disease or condition causing death.*," "Diabetes mellitus" and "Infarction ileum." On direct examination the defendant explained that he wrote "infarction ileum" so that he would not be accused of withholding information. He further testified on direct that he had no opinion on whether the presence of the hemostat caused Mr. Corey's death. Two doctors testified on defendant's behalf to the effect that the condition of the ileum was not a proximate cause of death. The deposition of the pathologist was also read to the jury on behalf of defendant. In summary it stated that the condition of the ileum was not a proximate cause of death; that the condition of the ileum could have resulted in death within a matter of days if corrective surgery were not performed; and that corrective surgery probably would have been fatal to the decedent, in view of his generally poor state of health.

The only medical evidence produced by plaintiffs, other than the death certificate and certain exhibits, was testimony of defendant on statutory cross-examination.

Defendant's motions for involuntary dismissal at the close of plaintiffs' evidence and for a directed verdict at the close of trial were denied.

The jury returned a verdict in favor of defendant, and judgment was entered thereon.

Plaintiffs thereafter moved for new trial. One of their grounds was that an instruction given by the trial court effectively told the jury to disregard the evidence of the death certificate. The district judge agreed and granted a new trial. Dr. Wilson appealed from the order granting a new trial.

■■■ As his first assignment of error, defendant alleges that the court erred in refusing to direct a verdict in defendant's favor. It is evident that the only real factual issue is whether defendant's negligence, which was patent, was a proximate cause of decedent's death. In defendant's favor is the testimony of three doctors that the presence of the hemostat in decedent's body, which unquestionably resulted from defendant's negligence, was not a cause of death. In plaintiffs' favor was the certificate of death, on which it was stated that the infarction of the ileum was another significant condition contributing to death but not related to the disease or condition causing death. The defendant, who signed the death certificate, attempted to explain away this statement, and also testified that he had no opinion on whether the presence of the hemostat was a cause of death. Nevertheless, as an exception to the hearsay rule, a properly filed certificate of death, or a copy thereof certified by the state registrar, is prima facie evidence of "the facts" stated therein. I.C. §§ 39–258, 39–263; Hillman v. Utah Power & Light Co., 56 Idaho 67, 51 P.2d 703 (1935). Whether a death certificate entry attributing death to illness, disease or other physical condition is admissible as evidence of the cause of death as opposed to the facts of the death has been a subject on which judicial opinions have not always agreed. See generally, Annot. 21 A.L.R.3d 418

(1968). To this court it appears that a death certificate may be admissible as prima facie evidence of the cause of death, if the declarant attesting to such cause in the certificate would have been competent to testify in court to his opinion of the cause of death. See Healy v. Hoy, 115 Minn. 321, 132 N.W. 208 (1911) (death certificate signed by attending physician admissible to show cause of death); Loughlin v. Marr-Bridger Grocer Co., 10 S.W.2d 75 (Mo.App.1928) (to the same effect); Duffy v. 42nd Street, M. & S. N. Av. Ry. Co., 266 App.Div. 865, 42 N.Y.S.2d 534 (1943) (death certificate admissible to show cause of death); Bishop v. Guthrie, 25 Ohio O.2d 375, 90 Ohio Law Abst. 133, 184 N.E.2d 910 (Ct.App.1962) (statute making certified copy of official death certificate prima facie evidence of facts stated includes statement therein of medical cause of death); LaCount v. General Asbestos & Rubber Co., 184 S.C. 232, 192 S.E. 262 (1937) (to the same effect); Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 P. 406, 17 A.L.R. 346 (1921) (to the same effect); but see, DeCourcy v. Trustees of Westminster Presbyterian Church, Inc., 270 Minn. 560, 134 N.W.2d 326 (1965) (death certificate, similar to certificate in instant case, held to be susceptible of varying interpretations and thus unavailable as substitute for expert medical "testimony" as to cause of death).

■ Furthermore the death certificate constituted an extrajudicial statement by Dr. Wilson, who is a party to this action. It was admissible in evidence against him for all purposes. In the standard treatise on evidence, it is written:

"The statements made out of court by a party-opponent are universally deemed admissible, when offered against him.
    *   *   *   *   *   *
"* * * they do pass the gauntlet [of the Hearsay rule] when they are offered *against* him as opponent, because he himself is in that case the only one to invoke the Hearsay rule and because he *does not need to cross-examine himself.*

    *   *   *   *   *   *
"The Hearsay rule, therefore, is not a ground of objection when an opponent's assertions are offered *against* him; in such case, his assertions are deemed Admissions.
    *   *   *   *   *   *
"* * * all admissions, used against the opponent, satisfy the Hearsay rule and, when once in, have such testimonial value as belongs to any testimonial assertion under the circumstances; and the more notably they run counter to the natural bias or interest of the party *when made,* the more credible they become; this element adding to their probative value, but not being essential to their admissibility."

IV J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law, § 1048 (3rd Ed. 1940); see G. Bell, Handbook of Evidence for the Idaho Lawyer, 156 (1957); cf. Curtis v. Curtis, 58 Idaho 76, 70 P.2d 369 (1937); Culver v. Kehl, 21 Idaho 595, 123 P. 301 (1912).

■ In addition, as an expert medical witness and as attending physician of the decedent, Dr. Wilson obviously would have been competent to testify to his opinion of the cause of death. For all these reasons, and despite defendant's explanation of the death certificate and despite the other expert medical testimony introduced at trial, there existed an issue of fact concerning the proximate cause of death. This was an issue to be determined by the jury. The trial court acted correctly in refusing to direct a verdict in favor of defendant. See, Haman v. Prudential Insurance Co. of America, 91 Idaho 19, 415 P.2d 305 (1966); Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430 (1949); Coburn v. Moore, 320 Mass. 116, 68 N.E.2d 5 (1946); LaCount v. General Asbestos & Rubber Co., *supra.*

Defendant also assigns as error the trial court's action granting a new trial. The new trial was ordered on the ground that instruction no. 16, given to the jury, was

prejudicially erroneous. The instruction read:

"You are instructed that the cause of death is a medical question in that the factors which produce the same are beyond the knowledge of the common layman. Proof of the causation of death, therefore, must necessarily rest upon evidence obtained by medical doctors duly qualified and thus referred as expert witnesses. *The only way that you may decide this issue is by weighing the medical testimony produced by doctors herein.* You must not attempt to determine this question from any personal knowledge, for it is within the realm of experts in that field. If there is conflicting medical opinion upon this issue, then it is your duty, as by these instructions defined, to weigh such medical testimony and determine that which you believe to be the truth and best founded." (emphasis supplied).

■■ Plaintiffs contended, as we stated earlier, that the instruction indicated to the jury that they should disregard the "evidence" of the death certificate. Testimony is not synonymous with evidence. Estate of Fisher, 47 Idaho 668, 279 P. 291 (1929). "Testimony" relates to oral statements of a witness, while "evidence" includes anything perceptible to the senses when submitted to the court or jury as trier of the facts. Estate of Fisher, *supra*; Grayson v. Durant, 43 Okl. 799, 144 P. 592 (1914). Nevertheless the two terms are often used interchangeably; and the use of the word "testimony" instead of "evidence" in an instruction, where both oral and other evidence have been introduced at trial, does not constitute reversible error if it is clear from all the court's instructions that it was intended that all evidence be considered by the jury. Roberts v. Carlson, 142 Neb. 851, 8 N.W.2d 175 (1943); Grayson v. Durant, *supra*; Jones v. City of Seattle, 51 Wash. 245, 98 P. 743 (1908). When, however, the court, in speaking of the proximate cause of death, instructs that, "The *only* way that you may decide this issue is by weighing the medical testimony pro-

duced by doctors herein," it is reasonable to believe that a jury would disregard the evidence of the death certificate. Generally, in Idaho, negligence in malpractice cases must be established by expert medical "testimony," because the factors involved ordinarily are not within the knowledge or experience of laymen composing the jury. Hall v. Bacon, 93 Idaho 1, 453 P.2d 816 (May 6, 1969), and cases cited therein. Assuming, arguendo, that the general rule is applicable, by way of analogy, in determining proximate cause in malpractice cases, nevertheless where there is other competent evidence of proximate cause, for example the opinion of an expert medical practitioner recorded in a death certificate, the other evidence ought to be considered by the jury in reaching its determination. See, Douglas v. Bussabarger, 438 P.2d 829 (Wash.1968); contra, see, DeCourcy v. Trustees of Westminster Presbyterian Church, Inc., *supra*. A particularly salient reason for our decision is the well-known difficulty in obtaining expert medical testimony for use against a defendant physician in a malpractice action. See, J. Steincipher, Survey of Medical Professional Liability in Washington, 39 Wash.L.Rev. 704 (1964); Huffman v. Lindquist, 37 Cal.2d 465, 234 P.2d 34, 29 A.L.R.2d 485 (1951) (dissenting opinion of Carter, J.); Douglas v. Bussabarger, *supra*.

■ Appellant further contends that the death certificate, unexplained by medical testimony, has no evidentiary value, citing Call v. City of Burley, 57 Idaho 58, 62 P.2d 101 (1936). In that case, the court held that "* * * the X-ray picture that was introduced would be utterly useless as evidence without being explained, as it is clear, upon a view of the picture, that the average layman would get no information about the injury here complained of unless the alleged fracture is pointed out and explained to him." 57 Idaho, at 73, 62 P.2d, at 107. While we would agree that the death certificate required a certain degree of explanation in order to give it probative value, especially in defining in layman's terms the phrase "infarction ileum," we

are satisfied that sufficient explanation in fact was given.

We agree with the conclusion of the district court that the instruction inaccurately stated the law and was prejudicial to plaintiffs' case. The trial judge, therefore, was correct in granting a new trial. Walker v. Distler, 78 Idaho 38, 296 P.2d 452 (1956); I.R.C.P., Rules 59(a), 61; cf. Barry v. Arrow Transportation Company, 80 Idaho 447, 333 P.2d 1008 (1958).

Affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, SHEPARD and SPEAR, JJ., concur.