781 P.2d 229

Robert WALTON, Plaintiff–Respondent Cross–Appellant,

v.

POTLATCH CORPORATION, Defendant–Appellant Cross–Respondent.

No. 17177.

Supreme Court of Idaho.

Aug. 30, 1989.

Rehearing Denied Oct. 31, 1989.

Clements, Brown & McNichols, Lewiston, for defendant-appellant cross-respondent. Michael E. McNichols, argued.

Clark & Feeney, Lewiston, for plaintiff-respondent cross-appellant. Paul T. Clark argued.

HUNTLEY, Justice.*

This is an appeal from a personal injury action brought by Robert Walton against the Potlatch Corporation. Walton maintains that he sustained injuries after he inhaled chlorine dioxide while he was working as an employee of Western Industrial Fiberglass at Potlatch's pulp and paper facility in Lewiston, Idaho. Potlatch appeals from a jury verdict in Walton's favor, claiming the court erred in its instructions on the applicable standard of care, in its admission of certain evidence and in other matters.

In the fall of 1985 Potlatch (a corporation engaged in the business of manufacturing pulp and paper products), hired Western Industrial Fiberglass to apply fiberglass to the interior of Potlatch's chlorine dioxide bleaching tower dome. The job was to be performed during a plant shutdown. After Western commenced working on the interior of the dome, Potlatch also hired Western to apply fiberglass to the dome's exterior. Potlatch required Western to work at Potlatch's direction and to comply with Potlatch's safety plan. However, the only safety instruction Potlatch gave to Western was a verbal instruction on safety gear, face shields, hard hats, reporting to first aid, and the like.

Prior to the September 1985 plant shutdown and Western's fiberglassing work, Potlatch representatives were aware that chlorine dioxide gas was leaking from the water seal at the top of the bleaching tower dome. Officials from Western were not aware of the gas leak.

Western's owner, Chuck Walton, employed three workmen to physically prepare the top of the dome for the application of the fiberglass. They were: plaintiff Bob Walton, Mike Evett and Kerry Harding. The three workmen attended a safety meeting prior to going to the job site wherein Bob Walton was told not to forget his safety glasses, to use ear plugs, and to keep his hard hat on. In preparation for his work, Bob Walton picked the type of yellow face mask he had always taken to Potlatch, which mask was not a fresh air mask. Walton's co-worker Kerry Harding took the same type of mask. The workmen went to the Potlatch mill at approximately 1:00 p.m. on the afternoon of October 23, 1985. Plaintiff Bob Walton went up to the

---

* This opinion was prepared by Huntley, J., and voted on by the Court prior to his resignation

August 7, 1989.

tower for the first time that afternoon at approximately 1:30 p.m. He wore his mask over a full beard as he had in the army and as did other friends who worked in the pulp and paper plant. Walton had not read the label on any of the three yellow face masks which he opened and used. The label warned that the masks might not provide a satisfactory face seal with certain physical characteristics, such as a beard.

While on the tower, Walton encountered chlorine dioxide coming from the center of a shaft near the water seal. Chlorine dioxide is a gas which can have numerous harmful effects on people who come into contact with it. It can irritate the skin, the eyes, the tracheal/bronchial tract and the deeper recesses of the lungs. Although most people recover from exposure to chlorine dioxide, some never do.

Walton had been trained to put on a mask and leave an area when encountering gas, but he did not do so on this occasion. Although Walton wore his goggles and mask the entire time he was on the tower, the chlorine dioxide was so bad that it burned his nose and the back of his throat. In spite of his discomfort, Walton completed the job because he didn't feel he was in danger; his boss was with him for part of the time and he saw Potlatch employees in the area. Although Walton was in extreme discomfort, he drove home after work. He went to the hospital emergency room the next day.

As a result of the chlorine exposure Walton suffered chemical bronchitis and restrictive airway disease, resulting in diminution of pulmonary function to the point that he is not able to carry on his everyday home, work and social activities in the manner he previously enjoyed.

Walton filed suit against Potlatch on May 9, 1986, alleging negligence and asserting further that Potlatch's negligence was gross, wanton and willful. Walton sought to introduce Occupational Safety and Health Administration (OSHA) regulations and American National Standards Institute (ANSI) standards into evidence at trial, to show, *inter alia*, that Potlatch failed to provide any adequate warning of respiratory hazards. Walton also argued that the safety standards prepared and furnished by Potlatch did not contain or incorporate the OSHA regulations or the ANSI standards.

The court instructed the jury (in Instruction No. 9) that violation of certain OSHA regulations and ANSI standards constituted negligence per se. The court also instructed the jury (in Instruction No. 7), that Potlatch owed the plaintiff the duty of ordinary care. The court then went on (in Instruction No. 8), to instruct the jury that an owner of premises owes to employees of a contractor a duty to exercise ordinary care for management, inspection, safety, and provision of necessary warnings. Finally, the court allowed Walton to put on evidence of Potlatch's wealth and instructed the jury on punitive damages. In closing argument Walton asked for general damages of $568,920 plus his medical and pharmaceutical bills.

The jury attributed negligence in the following percentages: Walton 15%; Potlatch 60% and Western 25%. The jury denied punitive damages and awarded him $375,-000 in general damages. The court ultimately entered judgment on the verdict in favor of Walton in the amount of $248,-666.32 after reducing the jury's award for Walton's comparative negligence and for his worker's compensation benefits. Potlatch filed motion for remittitur or new trial, requesting that the court weigh the evidence and decide what it would have awarded and then compare that with what the jury actually awarded. The court denied the motion without indicating that it had determined what it would have awarded had it been the trier of fact. Potlatch appeals.

I.

Potlatch first claims that the trial court erred when it instructed the jury that violation of certain OSHA regulations and ANSI standards would constitute negligence per se. Potlatch supports this claim with arguments that: (1) OSHA regulations should not be used as evidence of negligence per se because the jury will place too much

emphasis on those regulations; (2) If OSHA regulations can be used as evidence of negligence per se, they can only be used to establish the negligence of a direct employer to an employee; (3) private tort actions brought against land owners, such as in the instant case, are properly governed only by the common law; finally, (4) even if violation of an OSHA regulation by a non-employer constitutes negligence per se, the trial court erred by instructing the jury on the wrong OSHA regulations.

While we disagree with the first three of Potlatch's arguments, we find sufficient cause to reverse and remand for new trial based upon the fourth argument. We discuss each of the four in turn.

### A.

■ OSHA regulations may be used as evidence of negligence per se in suits by an employee of a contractor against the owner of the work site. In this case, the court properly instructed the jury on certain OSHA regulations, but the instructions were overly broad in that they imposed duties upon Potlatch which are properly attributable only to an immediate employer. Therefore, we reverse and remand with instructions to more carefully tailor the instructions as to the duty of care owed by Potlatch.

In *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1987), this Court ruled that OSHA regulations may be used to establish negligence per se for which the defendant can be held to respond to the plaintiff, provided that four criteria are met. The criteria are: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; (4) the violation must have been the proximate cause of the injury. *Sanchez, supra,* at 617, 733 P.2d 1234.[1]

### B.

Potlatch contends that the third criterion—the plaintiff must be a member of the class to be protected—is not satisfied because Bob Walton was not an employee of Potlatch. We disagree; Walton was a member of the class to be protected.

In *Brennan v. Underhill Construction Corp.*, 513 F.2d 1032 (2d Cir.1975), the 2nd circuit stated:

We turn then to the important question whether a violation of the Act requires in addition to proof of the existence of a hazard, evidence of direct exposure to the hazard by the employees of the employer who is responsible for the hazard. Concededly, ... the language of the "general duty" clause of the Act ... [is that] an employer's duty runs to "his employees" rather than a broader duty to keep a work area safe for any employees having access to that area. In addition, the Act narrowly defines "employee" to mean "an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C. § 652(6).

But to draw from this a general rule that standards under the Act can be violated only when a cited employer's own employees are shown to be directly exposed to a violation of a standard seems to us to be wholly unwarranted. It also fails to give effect to the clause under which Dick–Underhill [Defendant] was cited, subparagraph (2) of § 654(a). That subparagraph requires employers to "comply with occupational safety and health standards promulgated under the Act." This specific duty to comply with the Secretary's standards is in no way limited to situations where a violation of a standard is linked to exposure of his employees to the hazard. It is a duty over and above his general duty to his own employees under § 654(a)(1). *See* Morey, The General Duty Clause of the Occupa-

---

**1.** The negligence per se is established by elements (2) and (3) (*see Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1983)) and it is necessary to further find elements (1) and (4) to hold the defendant liable.

tional Safety and Health Act of 1970, 86 Harv.L.Rev. 988, 989 (1973). *In a situation where, as here, an employer is in control of an area, and responsible for its maintenance, we hold that to prove a violation of OSHA the Secretary of Labor need only show that a hazard has been committed and that the area of the hazard was accessible to the employees of the cited employer or those of other employers engaged in a common undertaking.*

We have in mind the broad purpose of the Act "so far as possible" to assure "every working man and woman in the Nation safe and healthful working conditions ..." 29 U.S.C. § 651(b). It was the intention of Congress to encourage reduction of safety hazards to employees "at their places of employment." 29 U.S.C. § 651(b)(1).

In *Beatty Equipment Leasing v. Secretary of Labor, Etc.*, 577 F.2d 534 (1978), the 9th Circuit referred to the *Brennan* opinion and stated:

We agree with this interpretation of the statute. It facilitates the broad remedial purpose of the Act which Congress declared is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651. As this court has stated, "Congress clearly intended to require employers to eliminate all foreseeable and preventable hazards." *California Stevedore and Ballast Co. v. OSHRC*, 517 F.2d 986, 988 (9th Cir.1975). *We agree with the Commission that this policy can best be effectuated by placing the responsibility for hazards on those who create them.*

The underlying principles of OSHA, as delineated in *Brennan* and, *Beatty, supra*, are fully applicable to this case. It was Potlatch's bleaching tower dome that leaked chlorine dioxide gas; hence, the source of Walton's harm—the gas—was within Potlatch's, not Western's or Walton's control. Potlatch officials knew of the leak but did not disclose to Western. There was testimony the gas leak was a hazard Potlatch not only could have fore-

seen, but was aware of and should have prevented. Under 29 C.F.R. § 1910.261(h)(2)(11) Potlatch had a clear and specific duty not to emit chlorine gas into the atmosphere. Thus, under the teachings of *Brennan, supra,* and *Beatty*, it was proper for the trial court to submit the negligence per se instruction (No. 9) to the jury. The special verdict form does not reveal whether the verdict was premised upon breach of the duty of ordinary care, (Instruction No. 7); the landlord's breach of duty of care toward an invitee (Instruction No. 8); or negligence *per se* (Instruction No. 9), and by this discussion we do not imply which was the basis of the verdict.

In *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799 (6th Cir.1984), the court held that the specific duty clause of chapter 15, § 654 was enacted for the special benefit of all employees, including employees of independent contractors, who perform work at the employer's place.

Black's Dictionary defines an independent contractor as:

Generally, one who, in exercise of an independent employment, contracts to do a piece of work *according to his own methods* and is *subject to his employer's control only as to end product or final result of his work. Hammes v. Suk*, 291 Minn. 233, 190 N.W.2d 478, 480, 481 [(1971)]. One who renders service in course of independent employment or occupation, and who *follows employer's desires only as to results of work, and not as to means whereby it is to be accomplished. Sparks v. L.D. Folsom Co.*, 217 Cal.App.2d 279, 31 Cal.Rptr. 640, 643 [(1963)]; *Housewright v. Pacific Far East Line Inc.*, 229 Cal.App.2d 259, 40 Cal.Rptr. 208, 212 [(1964)]; *Dowling v. Mutual Life Ins. Co. of New York*, La. App., 168 So.2d 107, 112 [(1964)].

An independent contractor is a person who contracts with another to do something for him *but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking*. He may or may not

be an agent. Restatement, Second, Agency, § 2.

In the instant case, Western was more closely bound to Potlatch than a normal independent contractor would have been. This is because Western was required to work at Potlatch's direction and comply with Potlatch's safety plan, rather than being able to work according to its own independent methods. Thus, there is even greater reason to find the OSHA regulations applicable to this case than there was in *Teal, supra.*

## C.

■ The foregoing law and facts vitiate Potlatch's first three arguments. This leaves Potlatch's final contention on this assignment of error, that the trial court erred in its Instruction No. 9 on the OSHA regulations by making them over broad in the sense of utilizing the regulations to impose duties on Potlatch which could apply only to the immediate employer under their plain wording. We agree with Potlatch in this regard and, therefore, reverse for new trial.

Instruction No. 9, some seven pages in length, set forth verbatim twenty-six sections or subsections of the regulations. It opened with the following paragraph:

> If you find that *Potlatch Corporation* created the hazard or had control over the condition which exposed a worker to a violation of any of the following described laws, then these laws apply to Potlatch, regardless of whether the worker was employed by Potlatch. These laws also apply to Western Industrial Fiberglass/Chuck Walton, and the plaintiff. (Emphasis supplied.)

The instruction subsequently contained many sections dealing with matters such as training and instruction of a nature which could only be the responsibility of the immediate employer under the plain wording of the regulation.

Since the special verdict form does not provide insight as to which asserted acts of negligence were the foundation of the verdict, Potlatch correctly complains that it cannot be determined whether the jury premised its verdict on acts or omissions which are properly chargeable only to Western Industrial Fiberglass as distinguished from Potlatch

When a jury verdict is rendered on the basis of incorrect instructions, the appropriate remedy is the granting of a new trial.

Idaho Rule of Civil Procedure 59(a) provides in pertinent part:

> **Rule 59(a). New trial—Amendment of judgment—Grounds.—**A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
>
> 1. *Irregularity in the proceedings of the court,* jury or adverse party or any order of the court *or abuse of discretion* by which either party was prevented from having a fair trial.
>
> . . . .
>
> 7. *Error in law, occurring at the trial.* Any motion for a new trial based upon any of the grounds set forth in subdivisions 1, 2, 3 or 4 must be accompanied by an affidavit stating in detail the facts relied upon in support of such motion for a new trial. Any motion based on subdivisions 6 or 7 must set forth the factual grounds therefor with particularity. [Amended March 20, 1985, effective July 1, 1985.]

Here the giving of Instruction No. 9 constituted such irregularity and error in law as to bring the case within Rule 59(a).

In *Kuhn v. Dell,* 89 Idaho 250, 258, 404 P.2d 357 (1965) this Court held:

> It is reversible error to instruct the jury on the doctrine of last clear chance where there is no substantial evidence to support the doctrine. *Graham v. Milsap* [77 Idaho 179, 290 P.2d 744 (1955) ], *supra; Cournyer v. Follett,* 85 Idaho 119, 376 P.2d 707 (1962); *Hale v. Gunter,* 82 Idaho 534, 356 P.2d 223 (1960); *Ralph v. Union Pacific Railroad Company,* 82 Idaho 240, 351 P.2d 464 (1960); *Laidlaw v. Barker,* 78 Idaho 67, 297 P.2d 287 (1956).

In *Everton v. Blair,* 99 Idaho 14, 576 P.2d 585 (1978) this court held:

The trial court is under a duty to instruct the jury on every reasonable theory recognized by law that is supported at trial. *Hodge v. Borden,* 91 Idaho 125, 417 P.2d 75 (1966); *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297 (1964); *Wurm v. Pulice,* 82 Idaho 359, 353 P.2d 1071 (1960). However, instructions should not be given which are not based on evidence from the trial. *Bratton v. Slininger,* 93 Idaho 248, 460 P.2d 383 (1969); *Fawcett v. Kirby,* 92 Idaho 48, 436 P.2d 714 (1968). Instructions should not be given on a theory which is not legally sound. *Corey v. Wilson,* 93 Idaho 54, 454 P.2d 951 (1969); *Cassia Creek Reservoir Co. v. Harper,* [91 Idaho 488, 426 P.2d 209 (1967)], *supra.*

*An instruction which incorrectly states the law provides grounds for ordering a new trial. Corey v. Wilson, supra; Walker v. Distler,* 78 Idaho 38, 296 P.2d 452 (1956); *I.R.C.P.* 59(a)(7).

Accordingly, we reverse and remand for new trial with directions to re-tailor any instructions on the OSHA regulations to fit the evidence as to any specific asserted breach of duty by Potlatch.

## II.

■ Potlatch's second assignment of error is that Instruction No. 8 overstated the duty Potlatch owed to Walton. Under Idaho law a landowner owes an invitee a duty to keep its premises in a reasonably safe condition and to warn of hidden or concealed dangers which the owner knows of or should have known of by exercise of reasonable care. *See, Curtis v. DeAtley,* 104 Idaho 787, 791, 663 P.2d 1089 (1983).

2.  Instruction No. 7 essentially conveyed the correct law to the jury; the instruction reads:
    It was the duty of the plaintiff, Robert Walton, and the defendant, Potlatch Corporation, and Chuck Walton/Western Industrial Fiberglass, before and at the time of the occurrence, to use ordinary care for the safety of the plaintiff.
    Instruction No. 8 reads:
    An owner of premises who employs a contractor to perform work thereon, but who remains in control of the premises where the work is being done, owes to employees of the contractor a duty to exercise ordinary care:

Potlatch argues that Instruction No. 8's repetition and expansion of the proper standard, stated in Instruction No. 7, is impermissible under *Addey v. Stewart,* 69 Idaho 357, 364, 207 P.2d 498 (1949).[2]

In *Ryals v. Broadbent Dev. Co.,* 98 Idaho 392, 565 P.2d 982 (1987), this Court dealt with a similar situation. In Riles, a contractor's employee sued the owner of the premises where the employee was working. On appeal, the defendant owner maintained that the various jury instructions regarding the owner's duty toward the plaintiff employee were repetitious and overly emphasized the plaintiff's theory of the case. This Court rejected that argument on the ground that each jury instruction performed a "different legitimate function." The same can be said in this case. In Instruction No. 7 the court informed the jury of the basic duty of care a landowner owes to an invitee. Potlatch is a landowner and Walton, at the very least, could be described as an invitee. So, Instruction No. 7 served a legitimate function. Instruction No. 8 informed the jury of the duty a landowner who is also an employer owes to a contractor he employs to work on the premises. Potlatch was also a land owner which employed a contractor, i.e., Western Industrial Fiberglass Corporation, to perform work on Potlatch's premises. Thus, Instruction No. 8 served a different and legitimate function. We find no error in the giving of the two instructions.

## III.

■ Potlatch's third assignment of error is that the trial court erred in admitting evidence in support of an award of punitive damages because Potlatch asserts there

a) in the *management* of such premises in order to avoid exposing such employees to an unreasonable risk of harm;
b) in *inspection* of the premises for the purpose of discovering dangerous conditions when the owner has reasonable cause to anticipate the existence of such conditions;
c) to have his premises in a *reasonably safe condition;* and
d) to *give warning* of concealed defects, which are known to the owner or by exercise of ordinary care could have been discovered by the owner. (Emphasis added.)

was no evidence of a "harmful state of mind" or evidence of approval or ratification by management of the conduct of its employees. Potlatch asserts the admission of that testimony may have colored the jury's approach to other issues.

Our view of the record uncovers no testimony which would establish the requisite "harmful state of mind" by any specific employee of Potlatch. When asked to point to such testimony, Walton's counsel was only able to state:

I think that as I say a reasonable inference can be made that Potlatch knew all of these things at least within their corporate structure. Not to say that one individual knew it. *It is a situation the right hand didn't know what the left hand was doing* and I think that they not only violated all the general rules of negligence they violated the statutory rules that they are obligated to enforce.

There was testimony about a conversation having taken place between Chuck Walton, plaintiff's employer and one Bob Solders, a Potlatch maintenance planner about a chlorine dioxide leak a day or two before the subject incident. The testimony is disputed, but in any event it establishes no malice or harmful state of mind.

In *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 905, 665 P.2d 661 (1983) this Court stated:

An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Hatfield v. Max Rouse & Sons Northwest, supra,* 100 Idaho [840] at 851, 606 P.2d [944] at 955 [ (1980) ]. See *Linscott, supra.* The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence." (Citations omitted.)

Since there was no "state of mind" established in the instant case rising to that level, the court erred in submitting the issue to the jury and absent any additional evidence should not submit the issue on re-trial.

## IV.

Potlatch's fourth assignment of error is that the trial court erred in its failure to calculate what it would have awarded had it been the trier of fact, and in the court's failure to compare that award with what the jury awarded for the purpose of determining if the jury verdict was excessive.

Since we are reversing and remanding for new trial, this issue is mooted and we decline to address it now.

Reversed and remanded for new trial. Costs to appellant. No attorney fees awarded.

JOHNSON, J., and TOWLES and JUDD, JJ. Pro Tem., concur.

TOWLES, Justice Pro Tem., specially concurring.

I concur in the conclusion of the majority that the case must be remanded for new trial due to Instruction No. 9 on OSHA regulations.

However, in considering the court's Instruction Nos. 7 and 8 which defined a landowner's duty to an invitee, I would caution the trial court on remand to be cognizant of the recent decision of this Court in *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989) which abolished the defense of "open and obvious hazards" to a claim for negligence by an invitee against a landowner.

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur in Parts II, III and IV of the Court's opinion today. Further, I concur with the conclusion reached in Part I(C) which holds that Instruction No. 9 improperly imposed duties upon Potlatch which were extracted from OSHA regulations that could only apply to the plaintiff's immediate employer, Western Industrial Fiberglass (Western). However, I disagree

with Parts I(A) and (B) which conclude that "OSHA regulations may be used as evidence of negligence per se in suits by an employee of a contractor against the owner of the work site" who is not the employer of the injured employee.

Previously, in the case of *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1987), this Court held that violation of an OSHA regulation can provide the basis for a negligence per se instruction where the claimant is an employee of the defendant. However, in order to justify a negligence per se instruction under Idaho law, the defendant must violate a "positive statutory prohibition." This requirement was mandated by the seminal case of *Brixey v. Craig*, 49 Idaho 319, 288 P. 152 (1930), and has neither been overruled nor relaxed, though subsequent cases have imposed additional criteria. *See Kinney v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973). Here, however, Potlatch violated no positive statutory prohibition because those OSHA regulations cited in the majority opinion and OSHA's general regulations are directed toward the "employer" and "employee" exclusively, and not to third parties.

I further disagree with the majority's conclusion that plaintiff (Walton) is "a member of the class that OSHA regulations were intended to protect." I believe the better reasoned federal cases, in examining the OSHA statutes, have concluded that OSHA was intended only to apply between employers and employees, and not an employer's relationship with third parties. The Court's conclusion today unjustifiably expands our prior holding in *Sanchez* which held that negligence per se was an appropriate doctrine in a suit by an employee against an employer, not by some third party.

Whether OSHA regulates only the obligations of the employer to provide safe working conditions for his employee, or also states a standard of care due third persons (as the majority suggests), is, concededly, a matter of vigorous dispute. The majority relies on *Brennan v. Underhill Construction Corp.*, 513 F.2d 1032 (2d Cir. 1975), and *Beatty Equipment Leasing v.*

*Secretary of Labor, etc.*, 577 F.2d 534 (9th Cir.1978), to support its position. Both of those cases recognize that the Secretary of Labor can prove an OSHA violation by showing that a hazard has been committed and that "the area of the hazard was accessible to the employees of the cited employer or those of other employers engaged in a common undertaking." *See Brennan*, 513 F.2d at 1038. Notably, both of the cases relied on by the majority deal with the authority of the Secretary of Labor under OSHA, and neither case deals with the rights of injured third parties, nor do they specifically deal with the issue of negligence per se. Those cases do not hold that, merely because an employer can be cited by the Secretary of Labor for violating an OSHA regulation, even in the absence of harm or hazard to his employees, that such authority in the Secretary of Labor is tantamount to a holding that the same violation can be the basis of an instruction on negligence per se by some third party.

The better view is taken by those courts which hold that OSHA regulations are designed to protect only an employer's own employees. *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir.1981); *Anning–Johnson Co. v. OSHRC*, 516 F.2d 1081 (7th Cir.1975); *Horn v. C.L. Osborn Construction Co.*, 591 F.2d 318 (5th Cir. 1979). This view finds ample support in the Act's purpose, language and legislative history. The key operative provisions of the Act impose upon each employer two duties. The first is found in the "general duty clause" which requires that "each employer shall furnish to each of *his employees*" a place of employment free from recognized hazards. 29 U.S.C. § 654(a)(1) (1970) (emphasis added). The second requires that "*each employer* shall comply with the health and safety standards under this chapter." 29 U.S.C. § 654(a)(2) (1970) (emphasis added). Moreover, § 4(b)(4) of the Act states that "nothing in this chapter shall be construed to supersede or in any manner affect any workman's compensation law or to *enlarge* or diminish or *affect* in any other manner the common law or statutory rights, duties or liabilities of em-

ployers and employees." (Emphasis added.) Without question, Potlatch's common law tort liability is affected and enlarged (in contravention of § 4's clear mandate) by furnishing a third party non-employee with a weapon (negligence per se) that was hitherto no part of his common law arsenal.

Furthermore, the effect of a negligence per se instruction is to deprive a litigant of his right to a jury trial on the question of the reasonableness of his conduct which is the subject of the negligence per se instruction. Thus, two essential elements of a prima facie negligence case—duty and breach—are "taken away from the jury." *See* Prosser & Keeton on Torts, p. 230 (5th ed.). By such a negligence per se instruction the jury, in effect, is directed not to consider the reasonableness of the person's acts, the court having concluded that by violating a "positive statutory prohibition" the person's conduct is unreasonable, and therefore negligent, as a matter of law. Given the strong public policy in favor of jury trials, as rooted in Art. 1, § 7, of the Idaho Constitution, negligence per se instructions should only be approved where a party has clearly violated a positive statutory prohibition. Given the equivocal nature of whether or not OSHA has any authority, much less intended its regulations to apply to third parties who might come in contact with the employer, rather than the employer's own employees, the strong policy in this state favoring jury trials on issues of fact should not be usurped by an overbroad application of the doctrine of negligence per se. Walton and others in his position are adequately safeguarded by the laws of negligence and landowner liability, and these doctrines in turn protect the employer by subjecting him to liability only when a jury finds his conduct to be unreasonable. However, by an over-expansive application of the doctrine of negligence per se to non-employees, Potlatch's right to trial by jury on the reasonableness of its conduct has been denied, I believe in violation of Art. 1, § 7, of the Idaho Constitution. *Steed v. Young,* 115 Idaho 247, 766 P.2d 717 (1989). The Court's expansive reading really turns the OSHA law into an environmental protection act at the expense of the right to a jury trial.

Accordingly, I dissent from Parts I(A) and (B) of the Court's opinion which approves of the giving of a negligence per se instruction in this case.