862 P.2d 1080

**Willis M. MORGAN and Lynda M. Morgan, husband and wife, Plaintiffs–Respondents,**

v.

**STATE of Idaho, DEPARTMENT of PUBLIC WORKS, John Doe, or John Doe, Inc., Defendants–Appellants.**

No. 19709.

Supreme Court of Idaho, Coeur d'Alene, May 1993 Term.

Oct. 29, 1993.

Larry EchoHawk, Atty. Gen., Boise, Clements, Brown & McNichols, Lewiston, for defendants-appellants. Jack R. Little, argued.

Brown & Litteneker, Lewiston, for plaintiffs-respondents. Charles A. Brown, argued.

SILAK, Justice.

The State of Idaho appeals from a judgment entered pursuant to a jury's special verdict finding the State sixty percent liable for personal injuries sustained by Willis Morgan when he stepped backwards off a loading dock located at a state office building. The State argues that the trial court erred in denying the State's pretrial motion for partial summary judgment and in its instructions to the jury. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Toward the end of March, 1987, Willis Morgan, who is totally blind, obtained a concession franchise through the Business Enterprise Program run by the Idaho Commission for the Blind. Willis's wife, Lynda, who is fully sighted, assisted him in operating the commissary at the Lewiston State Office Building and maintaining vending machines at the airport and other state and city buildings around Lewiston. To operate the business, the Morgans used their own vehicle to pick up food supplies from purveyors in Lewiston and then stored the supplies at the state office building for later sale.

When delivering inventory to the storage rooms and commissary, which were on the third floor of the state office building, the Morgans would usually park their vehicle in the driveway on the south side of the building, Willis would unload the goods onto a hand truck, and cart them across a loading platform to a freight elevator, which was also on the south side of the building. A three and one-half foot high dock, or drop off, was on the east side of the loading platform, which was about thirteen feet wide (north to south) and nine feet deep (east to west). The platform was enclosed by walls on the north, west, and south sides. The wall on the north side of the platform consisted of the south wall of the office building, where the freight elevator doors were located. The wall on the south side had an opening in it to allow persons to access the loading dock and freight elevator from the parking lot and driveway which were on the south side of the building. A wall ran across the entire west side of the platform. From the dock side of the platform, a ramp ascended to the east up to the level of the driveway and parking lot. In performing their frequent, if not daily, deliveries to the state office building, the Morgans would not back their vehicle down the ramp to the loading dock, but instead they would park their vehicle in the driveway and access the loading platform through the opening in the south wall.

On April 9, 1987, between one and two weeks after taking over the business, Willis fell and was injured as he was delivering inventory to the state office building. Willis had unloaded eleven cases of soft drinks from the vehicle onto the hand truck. While on the loading dock, Willis walked backwards (to the east) in order to turn the hand truck around and push it forward across the loading dock. As he was backing up, Willis stepped backwards off the loading dock, landing on his back with cases of soft drinks on top of him. As a result of the fall, Willis sustained various injuries, including a fractured pelvis, a fractured elbow, and a sprained shoulder and wrist. Although Willis had delivered inventory to the state office building via the freight elevator numerous times, he testified that he was completely unaware that what he assumed was a walkway between the driveway and the freight elevator door was actually a loading platform with an open drop-off or dock on the east side.

The Morgans sued the State, claiming that it was negligent for failing either to make the loading platform safe for blind persons or to take reasonable measures to warn blind persons entering the loading platform area that they were entering an area with potential dangers. The State denied any negligence in the design or construction of the loading dock area, asserted that it breached no duty to warn Willis about the loading dock, asserted that Willis's injuries were the result of his own negligence, and claimed immunity from liability under the design immunity provisions of the Idaho Tort Claims Act.

Before trial, both parties filed motions for partial summary judgment. In their motion, the Morgans asserted that as a matter of law, the State's construction of the loading dock area—without guard rails along the open edge of the dock and without tactile warning devices to warn blind persons of potential danger as they entered the loading dock area—violated certain state building codes, including: (1) the Uniform Building Code; (2) the Life Safety Code; and (3) the American National Standard Specifications for Making Buildings and Facilities Accessible To and Useable by Physically Handicapped People (ANSI Standards).[1] The Morgans asserted that the State's violation of these building codes constituted negligence as a matter of law. In its motion, the State sought a ruling that as a matter of law the design and construction of the loading dock area complied with all applicable building codes.

---

1. Adopted in Idaho at I.C. § 39–4109(3). The 1993 amendments to section 39–4109(3) substituted the Americans with Disabilities Act (ADA), Part III (Appendix A to Part 36–Standards for Accessible Design), for the ANSI Standards.

In ruling on the parties' opposing motions for partial summary judgment, the district court concluded that, as a matter of law, the State's design and construction of the loading dock area violated neither the Uniform Building Code nor the Life Safety Code. However, the court ruled that, as a matter of law, the State violated the ANSI Standards by not placing a tactile warning device on the interior freight elevator doors in order to warn blind persons that the doors led to a potentially dangerous area.[2] The district court declined to rule, however, that the State's noncompliance with the ANSI Standards constituted negligence *per se*. The court concluded that the jury might properly find, depending on the evidence presented at trial, that the State's noncompliance with the ANSI Standards was excusable, and therefore not negligent. The district court denied the State's motion ruling that there were disputed issues of material fact as to the State's code compliance.

The case was subsequently tried to a jury, which returned a special verdict finding that both Willis and the State were negligent, and that the damages which the Morgans suffered as a result of Willis's injuries totalled $170,000. The jury determined that Willis's negligence contributed forty percent to his injuries and the State's negligence contributed sixty percent. Based on the jury's verdict, the trial court entered judgment in favor of the Morgans, awarding them $102,000 (sixty percent of $170,000) against the State. The State now appeals, challenging the district court's denial of its motion for partial summary judgment as well as several jury instructions.

## II. ISSUES ON APPEAL

The State raises the following issues on appeal:

1. Whether the trial court erred in denying the State's motion for partial summary judgment based on its conclusion that the ANSI Standards requiring tactile warnings to be placed on doors leading to areas which might prove dangerous to a blind person applied to the interior freight elevator doors of the state office building.

2. Whether the trial court erred in refusing to give the State's requested Jury Instruction No. 14 regarding the design immunity defense to governmental liability established by I.C. § 6–904(8) of the Idaho Tort Claims Act.

3. Whether the trial court erred in giving Jury Instruction No. 10 which instructed the jury that the State had a duty to warn invitees of concealed defects.

4. Whether the trial court erred in giving Jury Instruction No. 17, which instructed the jury that it could award the plaintiffs the reasonable value of necessary medical care received as a result of the Willis's injuries.

The Morgans raise one additional issue on appeal:

5. Whether the Morgans are entitled to attorney fees on appeal.

## III. ANALYSIS

A. *The Trial Court Did Not Err in Denying the State's Motion for Partial Summary Judgment.*

The State first argues that the district court's application of the ANSI Standards to the interior freight elevator doors was erroneous because it contradicted the expert opinion of Jack Rayne, the Chief Plans Examiner for the Idaho Department of Labor and Industrial Services, who testified by affidavit that the design and construction of the loading dock area complied with all applicable codes. The State contends

---

**2.** The district court based its decision on section 4.29.3 of the 1980 Standards, which provides as follows:

4.29.3 Tactile Warnings on Doors to Hazardous Areas. Doors that lead to areas that might prove dangerous to a blind person (for example, doors to loading platforms, boiler rooms, stages, and the like) shall be made

identifiable to the touch by a textured surface on the door handle, knob, pull, or other operating hardware. This textured surface may be made by knurling or roughening or by a material applied to the contact surface. Such textured surfaces shall not be provided for emergency exit doors or any doors other than those to hazardous areas.

Rayne's testimony that the loading dock area complied with all applicable codes was an implicit and uncontroverted expert opinion that either the ANSI Standards did not apply to the freight elevator doors, or, if they did apply, that the freight elevator doors were in compliance with those code provisions.

■ The State's argument fails, however, because Rayne's affidavit testimony neither considered nor addressed the applicability of the ANSI Standards to the interior freight elevator doors. Rayne's conclusions in his affidavit were prefaced by the following statement: "With respect to the Lewiston State Office Building, I have reviewed the attached eleven (11) photographs *of the loading dock—ramp area behind [the] building* and have drawn the following conclusions" (emphasis added). Conclusion number seven in Rayne's affidavit states:

> 7. *Based on the reviewed photographs* and in researching the applicable code references, it is my opinion that the *loading dock—ramp area* construction complies with the applicable codes which were in effect at the time of design and construction of the Lewiston State Office Building and the subsequent modification in the wall accessing the loading dock from the driveway.

(Emphasis added.) The eleven photographs which Rayne reviewed and on which he based his conclusions depict only the outside loading dock area behind the office building. None of the photographs depict the interior freight elevator doors. Rayne neither considered nor made any conclusions with respect to whether the ANSI Standards applied to the interior freight elevator doors and whether those doors were in compliance. Rayne's testimony was limited to the "outside" loading dock area behind the building. The district court ruled that the ANSI provisions applied to the freight elevator doors "inside"

the building and that those interior doors were noncompliant. Accordingly, we find no merit in the State's argument that the district court's conclusion was erroneous because it contradicted the uncontroverted expert opinion of Rayne.

■ The State's second argument simply challenges the district court's interpretation of the ANSI Standards, contending that the freight elevator doors in this case were not the type of doors contemplated by the ANSI drafters when they devised the tactile warning requirement for doors leading to hazardous areas. Because there is no factual dispute about the physical characteristics of the freight elevator doors, whether the ANSI Standards apply to those doors is purely a matter of statutory interpretation, and therefore a question of law which we review freely.

The State argues that the freight elevator doors are outside the scope of the ANSI Standards because they are not typical doors.[3] We find this argument unpersuasive. There is nothing in the language of the ANSI Standards themselves which would preclude application of the Standards to these doors. In fact, the 1971 version of the ANSI Standards applies the tactile warning requirements only to those "[d]oors that are not intended for normal use." The 1980 version of the ANSI Standards has no language limiting the meaning of the word "door." Under the plain language of this later version, a door which leads to an area that might prove dangerous to a blind person "shall" have a tactile warning on it.

■ Interpreting the ANSI Standards to apply to these freight elevator doors accords with the clear purpose of ANSI's tactile warning requirements for doors, which is to warn blind persons when they are about to enter an area which might prove hazardous to them. The focus of the provision, in harmony with its purpose, is

---

**3.** In order to operate these elevator doors, the operator must push a button to call the elevator, and when the elevator arrives, open a set of solid scissor doors by pushing the top half upward and the bottom half downward, and once those doors are opened, lift up a metal mesh door to enter into the elevator. In order to exit the elevator onto the loading dock, the operator must push the button sending the elevator to the ground floor, and then open the mesh and scissor doors on the other side of the elevator.

not on the type of door involved, but on the type of area to which the door gives access. This conclusion is suggested by ANSI's examples of circumstances requiring the tactile warnings. These examples show that the doors contemplated are not defined by their method of operation, but by where they lead to, i.e., "loading platforms, boiler rooms, stages, and the like." Significantly, the ANSI Standards specifically include doors that lead to loading platforms.

■ Accordingly, we find unpersuasive the State's assertion that the ANSI Standards are not intended to apply to the type of doors involved in this case. The facts of this case demonstrate that the freight elevator doors were operable by blind persons, and indeed the State expected and requested Willis, a blind person, to use the freight elevator in transporting his inventory to and from the building. Further, it is undisputed that the doors in question lead to a loading platform, the type of area which the ANSI Standards expressly identify as requiring the installation of tactile warnings. We hold that the ANSI Standards requiring tactile warnings on doors leading to hazardous areas applied to the freight elevator doors implicated in this case, and therefore the district court did not err in denying the State's motion for partial summary judgment.

B. *The District Court Did Not Err in Refusing to Give the State's Requested Jury Instruction on the Design Immunity Defense Established by I.C. § 6-904(8) of the Idaho Tort Claims Act.*

The Morgans have not alleged that the original design and construction of the state office building violated state building codes or was otherwise negligent. Rather, they allege that the State was negligent in performing certain modifications to the loading dock area in 1984 which did not comply with the code standards. In 1984, the State opened a section of the loading platform's south wall to allow persons to walk onto the loading platform from the driveway and parking lot areas. The Morgans claimed that this modification changed the nature of the facility from purely a loading platform, which could only be accessed by climbing up onto the dock from the ramp, to a loading platform/walkway which could be accessed from the driveway and parking lot without ever using the dock side of the platform.

In 1984, when the State modified the loading dock area, former I.C. § 6-904(8) (currently recodified with minor wording changes as I.C. § 6-904(7)), set forth the design immunity defense to governmental liability as follows:

6-904. **Exceptions to governmental liability.** A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:

. . . .

8. Arises out of a plan or design for construction or improvement to the highways, roads, streets, bridges, or other public property where such plan or design is prepared in substantial conformance with engineering or design standards in effect at the time of preparation of the plan or design, approved in advance of the construction or approved by the legislative body of the governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval.

This Court has held that under former I.C. § 6-904(8), two elements must be satisfied before the governmental entity can avail itself of the design immunity defense: "the design or plan had to be in substantial conformance with then existing engineering standards and the plan or design must also have been approved in advance of the construction." *Wellard v. State,* 118 Idaho 852, 853, 801 P.2d 561, 562 (1990) (citing *Bingham v. Idaho Dept. of Trans.,* 117 Idaho 147, 150, 786 P.2d 538, 541 (1989)).

At trial, the district court refused to give the State's requested jury instruction on design immunity on the ground that the State had failed to present evidence from which the jury could find that the plan or design of the loading dock area had been

approved in advance by the authorized body or agency. The State appeals, asserting that sufficient evidence of prior approval was produced at trial to submit this issue to the jury.

The State claims that it was entitled to a jury instruction on design immunity with respect to the 1984 modifications because (1) the design for the wall opening was prepared in substantial conformance with existing engineering or design standards and (2) it was approved in advance of the construction by the authorized legislative body or agency. To show that the design of the modification conformed to existing engineering standards, the State introduced the testimony of Ken Hartell, a plans examiner for the Idaho Department of Labor and Industrial Services, who testified that the 1984 modification was designed and constructed in conformance with existing standards.

■ The State's proof that the design of the modification was given adequate prior approval consisted of the testimony of Ed Kimbrough, superintendent of the state office building. Kimbrough testified that the division of public works was the administrative agency with authority over the Lewiston State Office Building for modifications of the type performed in 1984. Kimbrough also testified that "any alteration of the building as it stands has to be approved by our engineers, architects, and public works. The Department of Labor and Industry's safety inspectors. [sic] It has to go through those agencies for approval." Neither Kimbrough nor any other witness testified that the design of the 1984 modification *was* approved in advance by officials of these agencies. Kimbrough testified that Bill Shields, the Bureau Chief of the Bureau of Building Services, instructed him to hire a contractor to make the opening in the loading dock. The State did not, however, present any evidence that Shields, as Chief of the Bureau of Building Services, had the authority to approve the modification design. When asked about who had to approve this type of modification, Kimbrough did not mention the Chief of the Bureau of Building Services; he

merely testified that Shields told him to go ahead and hire a contractor to perform the work. There is no evidence that Shields or anyone else did in fact review and approve a design of the modification prior to construction. Because the State failed to present evidence from which the jury could have found that an authorized body or agency approved the design of the loading platform modification before construction, we find no error in the district court's refusal to instruct the jury on the design immunity defense.

C. *The Trial Court Did Not Err in Instructing the Jury that the State had a Duty to Warn of Concealed Defects.*

Over the objection of the State, the trial court gave the jury the following instruction:

## INSTRUCTION NO. 10

The State of Idaho has a duty to exercise ordinary care to have its premises in a reasonably safe condition and to give warning of concealed defects, which are known to the State of Idaho or by the exercise of ordinary care could have been discovered by the State of Idaho. This duty extends to all portions of the premises to which a person may reasonably be expected to go by express or implied invitation.

■ The State cites *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989), for the proposition that the standard of care which landowners owe to invitees is no longer qualified by the hidden or obvious nature of the risk involved, but is simply one of reasonable care under all the circumstances. The State contends that after *Harrison,* it is erroneous to instruct a jury that landowners have a duty to warn invitees of concealed defects on their property. We reject the State's assertion, noting that about seven months after *Harrison,* the Court issued *Walton v. Potlatch Corp.,* 116 Idaho 892, 781 P.2d 229 (1989), which reconfirmed the rule that "[u]nder Idaho law a landowner owes an invitee a duty to keep its premises in a reasonably safe con-

dition and to warn of hidden or concealed dangers which the owner knows of or should know of by exercise of reasonable care." *Id.* at 898, 781 P.2d at 235 (citing *Curtis v. DeAtley,* 104 Idaho 787, 791, 663 P.2d 1089, 1093 (1983)). Thus, *Harrison* did not abolish the duty of landowners to warn invitees of hidden dangers on their property, and the district court did not err in instructing the jury that the State had such a duty.

■ The State also contends that the district court erred in giving the instruction on concealed defects because the evidence presented did not raise the issue of a concealed defect. In essence, the State asserts that the danger posed by the loading dock was, as a matter of law, open and obvious, and therefore there was no factual issue whether the loading dock constituted a hidden danger to Willis. We disagree. In the context of the open and obvious danger rule, the Restatement of Torts defines the word "obvious" as follows: " 'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." RESTATEMENT (SECOND) OF TORTS § 343A cmt. b (1965). Whether Willis knew, or in the exercise of ordinary care should have known, of the loading dock and the danger it posed, was a question of fact for the jury to determine, unless reasonable minds could not disagree on the matter. *Otts v. Brough,* 90 Idaho 124, 135–36, 409 P.2d 95, 101 (1965). We hold that the evidence presented at trial created a factual issue as to whether the loading dock constituted a concealed danger to Willis, and therefore the court did not err in submitting this issue to the jury.

Finally, the State asserts that the court committed reversible error in giving Instruction No. 10 because it misstated the law. The State quotes the duty of landlords, as phrased in *Otts,* that landowners owe a duty to invitees "to keep the premises in a reasonably safe condition *or* to warn the invitee of hidden or concealed *dangers.*" *Id.* at 131, 409 P.2d at 98 (em-

phasis added). Instruction No. 10, based on IDJI 295, stated that a landowner has "a duty to exercise ordinary care to have its premises in a reasonably safe condition *and* to give warning of concealed *defects.*" The State claims that the instruction was erroneous because it placed a conjunctive duty on landowners which was stated disjunctively in *Otts,* and because the instruction refers to defects instead of dangers.

■ We review jury instructions on appeal to determine whether the instructions, taken as a whole, fairly and adequately present the issues and state the applicable law. *Sherwood v. Carter,* 119 Idaho 246, 256, 805 P.2d 452, 462 (1991). If the instructions taken as a whole fairly and adequately present the issues and do not mislead or prejudice a party, no reversible error is committed. *Id.* We find no reversible error in the district court's wording of Instruction No. 10. While various Idaho cases have stated the duty of landowners to invitees in disjunctive terms, a number of cases have also stated the duty in conjunctive terms, requiring landowners to maintain the premises in a safe condition *and* to warn of concealed dangers. *Walton,* 116 Idaho at 898, 781 P.2d at 235; *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 738, 518 P.2d 1194, 1200 (1974); *Martin v. Brown,* 56 Idaho 379, 381–82, 54 P.2d 1157, 1158 (1936). Thus, the conjunctive phrasing of the duty was in accordance with Idaho case law.

■ Nor do we consider the district court's use of the word "defect" instead of the word "danger" to create reversible error. We do not believe that use of the word "defect" in the context of this case would have misled the jury. The basis of the landowner's duty to warn "is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not to the person injured that a recovery is permitted." *Martin v. Brown,* 56 Idaho at 382, 54 P.2d at 1158. Thus, landowners have a duty to warn invitees when a condition on their property constitutes a danger

and it is concealed. The word "defect" in this case adequately conveyed to the jury the rule that the condition must constitute a risk or hazard to the invitee.

While the word "defect," in a context outside the record of this case, might not necessarily connote the existence of danger to people or property, the word "defect" in Instruction No. 10, when read together with the other instructions, clearly did so. In Instruction No. 7, the court instructed the jury that, "[i]t was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the *safety* of the plaintiff Willis Morgan." In Instruction No. 9, the court instructed the jury that, "[t]he State of Idaho is under a duty to exercise ordinary care in the management of the premises in order *to avoid exposing persons thereon to an unreasonable risk of harm.*" These instructions clearly informed the jury that the essence of the State's duty was to protect Willis from unreasonable risks of harm. The whole thrust of the Morgans' case was that the State created conditions on its premises which posed unreasonable risks of harm to Willis. Therefore, we do not believe that the jury, taking the instructions as a whole, would have understood it could find the State negligent simply upon a finding that the loading dock had some flaw in its form or function, regardless of whether the flaw actually posed a risk of harm to Willis. We conclude that Instruction No. 10 was a substantially correct statement of the law, applicable to the evidence, and not conflicting or misleading.

D. *The District Court Did Not Err in Instructing the Jury that it Could Award the Morgans the Reasonable Value of Necessary Medical Care.*

Over the State's objection, the district court gave Instruction No. 17 which instructed the jury that if they decided for the Morgans on liability, then the jury could award damages for "the reasonable value of necessary medical care received as a result of the injury." The State asserts this instruction was erroneous because no testimony was elicited from any medical

witness that the medical expenses claimed were necessary and received as a result of the injury. The State urges that in the absence of competent evidence as to the reasonable value of necessary medical care received as a result of the injury, it was error for the court to instruct the jury that it could award damages for Willis's reasonable medical expenses.

At trial, the Morgans introduced Willis's medical bills as evidence of the amount expended for treatment of his injuries. The State did not object to the introduction of this evidence, nor did the State present any evidence to show that the medical expenses claimed by the Morgans were unreasonable. This Court has held that "[o]rdinarily, testimony by the patient or by the physician or the health care provider on the amounts charged or paid for medical services is sufficient evidence of the reasonable value of the services in the absence of some showing to the contrary." *Farmer v. International Harvester Co.*, 97 Idaho 742, 745, 553 P.2d 1306, 1309 (1976). We hold that the unchallenged evidence presented by the Morgans regarding the medical expenses which they incurred as a result of Willis's injuries constitutes sufficient evidence of the reasonable value of the medical services rendered. Accordingly, the district court did not err in instructing the jury that it could award the Morgans damages for the reasonable value of necessary medical care received as a result of Willis's injuries.

## CONCLUSION

We hold that the district court did not err in denying the State's motion for partial summary judgment. The district court properly instructed the jury on the State's duty to install tactile warnings on doors leading to a loading dock. Nor did the district court err in refusing to instruct the jury on the design immunity defense to governmental liability, in instructing the jury that the State had a duty to warn of concealed defects on its premises, and in instructing the jury that it could award the Morgans damages for the reasonable value of the necessary medical care Willis re-

ceived as a result of his injuries. Accordingly, the judgment of the district court is affirmed.

Costs on appeal are awarded to the Morgans. I.A.R. 40. No attorney fees on appeal.

McDEVITT, C.J., BISTLINE and JOHNSON, JJ., and JUDD, J. Pro Tem., concur.